LUTA B. HARDEN v. THE CITY OF RALEIGH AND JOHN W. MANGUM, BUILDING INSPECTOR.

(Filed 27 October, 1926.)

1. Statutes—Municipal Corporations—Police Powers—Constitutional Law —Discrimination—Certiorari.

Where, in pursuance of authority conferred by statute a city has divided its territory into certain zones or districts, giving an inspector certain judicial powers as to kind or class of buildings to be erected therein, under a board of adjustment and review, providing also for *certiorari* to issue from the courts, the requirements for each zone or district uniform and for the health, morals and safety of its citizens, is a valid exercise of such powers both as to the statute conferring the same, and the ordinance, and is not contrary to our organic law inhibiting discrimination. 3 C. S., 2776(r-aa).

2. Same—Filling Stations—Automobiles.

Where there has been uniformity in the creation and exercise of the authority under an ordinance passed in pursuance of statute, in refusing to permit the erection of a gasoline filling station in a proper district, there is no violation of the Constitution against discrimination.

APPEAL by defendants from *Barnhill, J.,* at March Term, 1926, of WAKE.

The plaintiff owns a lot on the corner of Hillsboro Street and Ashe Avenue in the city of Raleigh, and in December, 1924, she applied to the building inspector for a permit to construct thereon a gasoline filling station, filing with her application plans and specifications as required by the ordinances of the city. Her application was denied and she brought suit praying that a writ of mandamus issue requiring the defendants to grant her permission to build the proposed filling station on the described lot. The case was heard by consent on the plaintiff's appeal from the decision of the board of adjustment as upon a writ of *certiorari,* and it was adjudged that the act of the Legislature providing for the zoning of the city is constitutional and that the or-

dinances passed pursuant to the act are valid. It was further adjudged that the plaintiff's lot is in a neighborhood business district; that the ordinances do not prohibit the construction of a filling station in such districts; that the defendants have permitted filling stations to be constructed in such districts; that the board of adjustment has exercised its discretion in individual cases and not on any general or specific regulation or rule, and that the defendants could not exercise an arbitrary discretion in individual cases. For these reasons it was finally adjudged that the permit be issued and the plaintiff be granted leave to build the filling station on her lot as prayed. The defendants excepted and appealed.

*Wm. B. Jones* for plaintiff.
*Manning & Manning and Wiley G. Barnes* for defendants.

ADAMS, J. At the special session of 1921 the General Assembly enacted a public-local law applicable to the counties of Buncombe and New Hanover, providing for the establishment of planning commissions in the cities and towns therein, and thereafter amended the act by including the county of Wake. P.-L. L., Ex. Ses. 1921, chaps. 169, 246. The powers thus conferred were enlarged and extended by a general law empowering cities and towns to adopt zoning and other regulations. Public Laws 1923, ch. 250; 3 C. S., 2776(r) *et seq.*

The plaintiff assailed these several acts and the ordinances adopted by the city pursuant thereto on the ground that they conflict with the organic law; but this question is not before us for the reason that the trial court decided this point against the plaintiff and she did not appeal from the adverse ruling.

The act of 1923, *supra,* is comprehensive; it contains a grant of powers not contained in the other acts. For the purpose of promoting health, safety, morals, and the general welfare, the General Assembly delegated these powers to the legislative body of cities and towns—the power to regulate the location and use of buildings for trade, industry, or residence; to prescribe uniform districts for each kind or class of buildings; to provide the manner in which such restrictions shall be enforced, and to amend, supplement, change, modify, or repeal such restrictions or regulations; to appoint a board of adjustment who may review, reverse, affirm, or modify any administrative order, requirement, decision, or determination appealed from, and to vary or modify any of the regulations or provisions of any ordinance relating to the construction of buildings, so that the spirit of the ordinance shall be observed and substantial justice done. 3 C. S., 2776(r-aa).

The concurring vote of four members of the board of adjustment is necessary to reverse any order of the building inspector and every decision of the board is subject to review by proceedings in the nature of *certiorari*.

In the exercise of the authority given it by the Legislature the city designated certain zones or districts, one division of which is neighborhood business districts. The plaintiff's lot is in this class. The ordinance provides that in a district of this class no building shall be used or erected for any trade, industry, or use that is noxious or offensive by reason of the emission of odor, dust, smoke, gas, fumes, vibration, or noise.

It is evident, we think, that the board of adjustment is clothed, if not with judicial, at least with *quasi*-judicial power, it being its duty to investigate facts and from its investigation to draw conclusions as a basis of official action and to exercise discretion of a judicial nature. These are not mere ministerial duties. Where the law prescribes and defines a duty with such certainty as to leave nothing to the exercise of judgment or discretion the act is ministerial; but the exercise of judgment or discretion may be regarded as the usual test by which to determine whether an act is ministerial or judicial. Within the class of *quasi*-judicial acts fall the board's conclusions as to whether the proposed building would be noxious or offensive or detrimental to the public safety or welfare by reason of its situation or the surrounding conditions; also in this class is the legal discretion to be exercised by the board upon the conclusions reached. As we construe them the ordinances are not wanting in uniformity; nor is the board's exercise of *quasi*-judicial functions arbitrary or subject to the objection that they deal with individual cases without regard to uniformity. In one part of a district a filling station may be noxious or offensive to the public within the purview of the ordinance, and in another part it may not be; at one place it may menace the public safety and at another it may not. Conditions and probable results must be taken into account. This is the principle on which the board of adjustment has acted; it passes on individual cases, of course; but each case is determined in the contemplation of the statute and the ordinance by a uniform rule.

*Quasi*-judicial functions, when exercised, not arbitrarily, but in subordination to a uniform rule prescribed by statute ordinarily are not subject to judicial control. It is only in extreme cases, those which are arbitrary, oppressive, or attended with manifest abuse, that the courts will interfere. In *Rosenthal v. Goldsboro,* 149 N. C., 128, it is said: "It may now be considered as established with us, that our courts will always be most reluctant to interfere with these municipal governments in the exercise of discretionary powers, conferred upon them for

the public weal, and will never do so unless their action should be so clearly unreasonable as to amount to an oppressive and manifest abuse of their discretion. This position is, we think, supported by the better reason, and is in accord with the decided weight of authority." *Parks v. Comrs.,* 186 N. C., 490; *Lee v. Waynesville,* 184 N. C., 568; *S. v. Vanhook,* 182 N. C., 831; *Dula v. School Trustees,* 177 N. C., 426; *Rollins v. Winston-Salem,* 176 N. C., 411.

In the cases cited by the plaintiff the right of dominion was restricted without regard to any general or uniform rule, or wrongful discrimination was apparent, or the exercise of power was arbitrary and unwarranted. In the present case a tribunal was established and charged with duties, not ministerial, but at least *quasi*-judicial and subject to review as the statute prescribed.

The judgment is

Reversed.