**ANDERSON, et al v. PHILLIPS PETROLEUM CO., et al.**

Circuit Court, Polk County.

December 11, 1953.

Bentley & Shafer, Lakeland, for petitioners.

Mabry, Reaves, Carlton, Fields & Ward, Tampa, for respondents.

D. O. ROGERS, Circuit Judge.

This is a certiorari proceeding brought under appropriate provisions of chapter 176, Florida Statutes 1951, to review an order of the board of adjustment of the city of Lakeland as such board is constituted under ordinance no. 847, the city's comprehensive zoning ordinance.

On July 8, 1953 Phillips Petroleum Co. (hereinafter referred to as "Phillips"), having acquired ownership of lots 1 and 2, block B, Palmola Park, applied for a permit to erect a filling station thereon to W. M. Ruby, city building inspector under the zoning ordinance. On the next day Ruby notified Phillips in writing that its application was denied, his letter of rejection, after citing the particular provision of the ordinance on which he based his rejection, going on to say—"it is held that the operation of a filling station in this location would be injurious to the occupants of adjacent properties by the objectionable emission of dust, dirt, fumes, gas, odors, noise, smoke and similar substances and conditions."

Phillips appealed to the board of adjustment and a hearing was held before the board at which time petitioners herein (or most of them) and other residents and property owners in the vicinity appeared and offered evidence, including considerable testimony and a number of exhibits and letters, in support of Ruby's decision. On August 24, 1953, the board overruled Ruby, directing him to issue a building permit for the proposed filling station.

Following entry of the board's order petitioners instituted these proceedings, writ of certiorari was issued, the board filed its return, the record of the proceedings before the board was duly lodged in this court, and the co-respondent Phillips filed its motion to quash the writ, asserting a number of grounds in support thereof.

When this cause came on for hearing on the motion to quash, petitioners offered additional evidence in the form of a series of photographs. Also, following the hearing and prior to the entry of this order and in keeping with an announcement to counsel for the parties, the court made a personal inspection of the entire area involved in these proceedings, including the area on So. Florida Ave. extending four blocks north and south of lots 1 and 2 and the entire length of Palmola Drive and Hibriten Way from the point where these two streets intersect So. Florida Ave. to their termini at Hollingsworth Drive. The inspection confirmed the record with respect to the character of the residential area which is Palmola Drive and Hibriten Way—except for the professional offices and retail store immediately north of lot 1, Palmola Drive and Hibriten

Way are devoted to very high class single family residences, beautifully appointed homes with well kept lawns and shrubbery.

It is undisputed that lots 1 and 2 are zoned "Business A" and were so classified when the zoning ordinance was adopted in July of 1950. At that time, and when Phillips acquired the property, lot 1 was occupied by a large single family dwelling. Lot 2 was vacant.

In the testimony before the board a representative of Phillips, W. O. White, admitted that the operation of the proposed station contemplated the usual services and activities which would ordinarily be conducted in connection with such business, further admitting that such operation would be productive of "the same type of noises" therefrom. He testified that the emission of gases, dust, dirt, fumes, odors, noise, etc. would not be more than from the ordinary garage.

In its order the board made the following factual determination —"The evidence clearly indicated that the proposed filling station is to be one of the ordinary regular filling stations as is seen from corner to corner throughout our city and there is no testimony in the record that this filling station would be different from the ordinary filling station."

That finding by the board is in harmony with Mr. Ruby's determination. Instead of reversing his administrative findings and determination the board affirmed him but, it reasoned, unless it can be shown that a permitted use "is not operated in the usual customary manner, the provisions of subsection 20 of section 7 of the ordinance cannot be brought into consideration." In my opinion such reasoning and such an interpretation and construction of subsection 20 is unsound and legally erroneous.

As is pointed out in petitioners' brief, and supported by the record, at no other place in the entire city, with one possible exception, does "Business A" immediately adjoin a first class single family residential area except where lots 1 and 2 abut directly on the private homes of some of these petitioners. Here, there is no gradual shading off or shading up. Here, just thirty feet from the bedroom windows of Mrs. Marie Anderson (and in related proximity to several others) Phillips proposes to erect and carry on the operation of a filling station, tire repairs and sales, mechanical repairs and the coming and going of tank wagons and huge transport trucks, all with attendant noise, odors, vibrations, inevitable refuse and disturbances. And, in this connection, the additional traffic hazard to elementary school children who have to negotiate

this corner to cross So. Florida Ave. at the point where the station would be located is, in my opinion, an equal or greater objectionable and injurious condition adversely affecting these small children who are occupants of "other properties" and whose welfare would be adversely affected by the increased traffic hazard at this point.

The Supreme Court has recognized that filling stations may properly be subjected to special regulations through the exercise of the police power in the interest of the welfare of the general public, as well as in the interest of that segment of the public which may be exposed to their effects. For example, in Harz v. Paxton (Fla.), 120 So. 3, it was held—

> When the ordinance in question and the action of the city officials pursuant thereto are considered with reference to the rules applicable to the exercise of the police power in the regulation of filling stations and public garages, the operation of which involves acts which are generally recognized as potential menaces to the public safety and health because of the storage and handling therein of highly inflammable explosive substances, it does not appear that in denying the permit here sought the respondent city officials have acted arbitrarily or unreasonably.

Similarly, in Olp v. Town of Brighton, 19 N.Y.S. 2d 546, in sustaining the refusal to issue a permit for the erection of a filling station within an area where such stations were permitted conditionally, just as here, it was stated—"The hazards to traffic and the peril from inflammable material on the premises are obvious. The impact on residential property values, the danger to pedestrians and school children in the vicinity, the protests from property owners immediately adjacent to petitioner's property . . . ."

Of particular interest is Bloch v. McCown (Ala.), 123 So. 213. Adjacent property owners objected to the erection of a filling station because of the objectionable emission of odors, vapors, dust, smoke, gas and noise. Sustaining the property owners, it was held —"The court knows what a filling station and repair shop is, and is of opinion that the business indicated by these terms should not, over the objection of adjacent . . . . property owners . . . . be intruded upon a section previously devoted to desirable residential purposes. A business, lawful in its nature, as is the business proposed by the defendant in this cause, and not a nuisance per se in one locality, may become a nuisance when conducted and maintained in another which is residential in character."

Harden v. City of Raleigh (N.C.), 135 S. E. 151, wherein application had been made for a permit to erect a filling station in an area

zoned for business and in which filling stations were not prohibited, presents a strikingly parallel situation to the case at bar. The building inspector, just as here, rejected the application on the ground that at this particular location the station would be offensive to other properties and the occupants thereof because of "the emission of odors, dust, smoke, gas, fumes, vibrations or noise." In sustaining the action of the inspector and the validity of the provision of the Raleigh zoning ordinance upon which he had predicated his rejection of the permit, it was held—

> In one part of a district a filling station may be noxious or offensive to the public within the purview of the ordinance and in another part it may not be; at one place it may menace the public safety and at another it may not. Conditions and probable results must be taken into account. * * *

> It may now be considered as established with us, that our courts will always be most reluctant to interfere with these municipal governments in the exercise of discretionary powers, conferred upon them for the public weal, and will never do so unless their action should be so clearly unreasonable as to amount to an oppressive and manifest abuse of their discretion.

This is the construction which the court places on subsection 20 which is here under consideration. If it is made to appear, with reasonable certainty, that any of the enumerated uses as set forth in subsection (a), section 7, by reason of its operation, would be "injurious . . . . to other properties or to the occupants thereof by reason of the objectionable emission of cinders, dust, dirt, fumes, gas, odor, noise, refuse matter, smoke, vapor, vibration, or similar substances or conditions" then such use, whatever be its nature, is properly denied by the administrative officer for the zoning ordinance. This officer is the building inspector, and so long as he exercises his judgment with reason and justification, and in the interest of the general welfare, as well as for the protection of "other properties . . . . or the occupants thereof" his administrative actions should not be disturbed unless the factual basis for his action fails to exist, thus rendering it arbitrary, unreasonable and capricious. But that situation of unreasonableness and caprice has not been made to appear—on the contrary his action here was factually justified and reasonable.

The pertinent part of ordinance no. 847 which I am called upon to construe is section 7 thereof. This section relates to "Business A Districts" which are defined as retail business districts, and proceeds to define the permitted uses therein. This category of uses is quite comprehensive and, following the schedule of uses, subsection 20 of section 7 imposes the following provisional limitation—

> All of the above listed described and permitted uses in a Business "A" district shall be permitted in such Business "A" districts, *provided that no operation shall be carried on which is injurious to* the operating personnel of the business or to *other properties, or to the occupants thereof* by reason of the objectionable emission of cinders, dust, dirt, fumes, gas, odor, noise, refuse matter, smoke, vapor, vibration, or similar substances or conditions. (Italics added.)

The meaning and intent of the foregoing provision is plain and unambiguous. It is obvious that the governing body of the city intended to cushion the harsh impact of certain types of business which by the very nature of their normal and ordinary operation would be objectionable and injurious to "other properties . . . . or to the occupants thereof"—any other construction of subsection 20 would do violence to the obvious and unmistakable meaning thereof.

Phillips urged that so construed subsection 20 unlawfully delegated authority to the building inspector—Blitch v. City of Ocala (Fla.), 195 So. 406 and Harz v. Paxton (Fla.), 120 So. 3, are the authorities upon which the validity thereof in this respect is sustained.

The motion to quash the writ filed by co-respondent Phillips Petroleum Co. is denied, and it is ordered that the order of the board of adjustment dated August 24, 1953 be and it is quashed and the co-respondent members of the board are ordered and directed to enter an order on the appeal to them by Phillips Petroleum Co. not inconsistent with this opinion and judgment.