H. T. JACKSON, ROY BUMPASS, G. C. SMITH, AND SANFORD SMITH v. GUILFORD COUNTY BOARD OF ADJUSTMENT UNDER THE ZONING ORDINANCE OF GUILFORD COUNTY, DR. ROBERT M. FOX, CHAIRMAN; S. R. STAFFORD, PAUL PHIPPS, ORVIE HAYWORTH, HOWARD S. WAYNICK, REGULAR MEMBERS; WILLIAM H. LANIER, R. MACK PEOPLES, ALTERNATE MEMBERS; AND LESTER O. JONES

No. 6818SC316

(Filed 25 September 1968)

1. Counties § 5; Constitutional Law § 8— county zoning — board of adjustment — authority to grant special exception — delegation of power

A county zoning ordinance which delegates to a board of adjustment the authority to grant a special exception to erect a mobile home park in an A-1 Agricultural District upon a finding that the grant "will not adversely affect the public interest" is in conformity with the statutory authority given by G.S. 153-266.17 and is not unconstitutional as a naked and arbitrary delegation of authority to make a determination without standards of legislative guidance, since the ordinance (1) clearly states its purpose of discouraging any use which, because of character or size, would create unusual requirements and costs for public services before such services are generally needed and (2) clearly details the conditions to be met before a mobile home park can be granted a special exception in the district.

2. Counties § 5; Municipal Corporations § 30— zoning ordinances — variance — special exception

A provision of a zoning ordinance permitting a variance from its terms and a provision granting a special exception meet two entirely different needs: (1) the variance contemplates a departure from the terms of the

ordinance and is authorized where the literal enforcement of the ordinance would result in unnecessary hardship, (2) the special exception contemplates a permitted use in a given zone or district and is granted after a public hearing and upon a finding that all the pertinent conditions of the ordinance are satisfied. G.S. 153-266.17.

**3. Counties § 5;    Municipal Corporations § 30—    standards for issuance of special exceptions**

The standards for the issuance of special permits and exceptions are usually less stringent than in the case of variances.

**4. Counties § 5;    Municipal Corporations § 30—    board of adjustment — authority as a quasi-judicial body — fact-finding powers**

The legislature may delegate to a zoning board of adjustment the authority as a quasi-judicial body to determine facts and therefrom to draw conclusions as a basis of its official action; the board must be given a standard to guide it in its determination, which standard, because of the nature of zoning ordinances and the unforeseeable factors involved, frequently must necessarily be general.

**5. Counties § 5;    Municipal Corporations § 30—    board of adjustment — sufficiency of legislative guidelines**

In determining the sufficiency of the standard by which a zoning board of adjustment is to be guided, the purpose and intent of the ordinance may be considered.

**6. Counties § 5—    board of adjustment — review by certiorari**

Decision of a county board of adjustment is subject to review by the Superior Court in a proceeding in the nature of certiorari. G.S. 153-266.17.

**7. Counties § 5—    board of adjustment — review — conclusiveness of findings**

Findings by a county board of adjustment that the granting of a special exception to permit construction of a mobile home park in an A-1 Agricultural District "will not adversely affect the public interest," which findings were based upon conflicting testimony taken under oath, *are held* supported by sufficient evidence and are conclusive on appeal.

APPEAL by petitioners from *Crissman, J.,* 13 May 1968 Civil Session, GUILFORD Superior Court.

On 15 March 1967, Lester O. Jones filed with the Guilford County Board of Adjustment an application for a special exception to the Guilford County Zoning Ordinance to erect a mobile home park in a district zoned A-1 Agricultural District, which permitted one or two family dwellings or mobile home and required a minimum lot area of one acre. After due notice, a public hearing was had and evidence was taken. After all interested parties had been heard, the Board, on unanimous vote, deferred decision pending an on-site study. The applicant and the spokesman for those opposing the application

met with the Board on the property. Thereafter on 1 May 1968 the Board found facts and unanimously granted the special exception with certain provisions attached. The petitioners filed a petition for writ of *certiorari* for review by the Superior Court of the action of the Board of Adjustment. The writ was issued and the matter heard before Lupton, J., at the 11 September 1967 Non-Jury Session of Guilford Superior Court. The court entered an order finding facts and remanding the matter to the Board "to hold a further hearing and then to make a finding of fact only on the question of whether or not the granting of the special exception to Lester O. Jones to erect a mobile home park as previously granted by the said Board will adversely affect the public interest."

On 7 November 1967, the Board, after due advertisement and notice, held another public hearing. Again all interested parties were heard and after all evidence was presented counsel for petitioners and respondents made statements. Thereafter the Board found as a fact "that the granting of the special exception to permit Lester O. Jones to construct a mobile home park as applied for will not adversely affect the public interest", and by unanimous vote, granted the special exception.

The petitioners applied to the Superior Court of Guilford County for a writ of *certiorari* to review the action of the Board of Adjustment. The writ was issued and a hearing was had before Crissman, J. The petitioners argued that the decision of the Board should be set aside for three reasons: (1) there was not sufficient evidence before the Board to support its finding that to grant the special exception will not adversely affect the public interest and to support its decision, (2) that the Board put the burden of proof on the petitioners, and (3) that the authority of the Board to grant the special exception is an unlawful and unconstitutional delegation of power and authority to the Board of Adjustment.

The trial court entered an order overruling all of the exceptions and assignments of error of the petitioners and affirming the ruling of the Board of Adjustment granting the special exception. From the entry of this judgment, petitioners appealed.

*Cannon, Wolfe, Coggin & Taylor by George W. Coggin for petitioner appellants.*

*J. Howard Coble and David I. Smith for respondent appellees.*

MORRIS, J.

Appellants raise two questions on appeal: (1) Did the court err in finding as a fact that there was sufficient evidence before the

Board of Adjustment that the granting of the special exception to the zoning ordinance would not adversely affect the public interest? and (2) Did the court err in finding that there was a lawful delegation of authority to the Board of Adjustment to find that the public interest will not be adversely affected when the zoning ordinance has no standard or guideline to control said Board?

[1] We will consider the second question first. Appellants earnestly contend that Section 6-13(B) of the Guilford County Zoning Ordinance is an unconstitutional attempt to confer on the Board of Adjustment a naked, arbitrary power to make a determination without standards of legislative guidance. That portion of the ordinance which appellants attack is subsection (4) of Section 6-13(B) as follows:

> "The Board shall make a finding that it is authorized and empowered to grant a special exception under the section of this ordinance described in the application and that the granting of the special exception will not adversely affect the public interest."

Appellants rely on *Coastal Highway v. Turnpike Authority,* 237 N.C. 52, 74 S.E. 2d 310. There Chapter 1024, Session Laws of 1949, was under consideration. The statute prescribed procedure by which the Municipal Board of Control, created by G.S. 160-195, could organize and create a municipal corporation for the purpose of acquiring rights of way, owning and operating a toll road or highway in the State. Section 3 of that statute provided:

> "Any person in any manner interested in the laying out and construction of the said toll road or highway may appear at the hearing of such petition, and the matter shall be tried as an issue of fact by the Municipal Board of Control, and no formal answer to the petition need be filed. The board may adjourn the hearing from time to time in its discretion. *The Municipal Board of Control shall determine whether or not the laying out, construction and operation of the toll road is in the public interest* and whether all the requirements of this Act have been substantially complied with and, if the Municipal Board of Control shall so find, it shall enter an order creating a municipal corporation and fixing the name of the same, giving it the name proposed in the petition unless, for good cause, it finds that some other name should be provided." (Emphasis supplied.)

Section 1 of the statute provided that not less than 10 persons were required to file a petition asking for the creation of the corporation.

Section 2 set out what the petition should contain, the required procedure for public hearing, and requirements of notice thereof.

Section 4 provided for election of board of commissioners of the corporation.

Section 5 provided for officers of the board of commissioners.

Section 7 conferred power of eminent domain on the corporation.

Section 8 provided corporation to be operated for benefit of public.

Section 9 conferred power to issue revenue bonds.

Section 10 exempted the bonds and notes from tax and exempted the property of the corporation from tax.

Section 11 gave State Highway and Public Works Commission right to acquire any toll road or highway constructed by the corporation and set out procedure therefor.

Justice Johnson, speaking for the Court, said that by Section 3 the Legislature had attempted to delegate to an administrative agency the crucial question whether a toll road or toll bridge in any given instance will be "in the public interest." With respect to that he said:

"Manifestly, the power to determine whether the construction and operation of a toll road or toll bridge in any given instance will be 'in the public interest' is purely a legislative question to be resolved only in the exercise or *under the direction of legislative powers of guidance and control.* Yet, the statute attempts to confer on the Municipal Board of Control the naked, arbitrary power to make this determination, *without standards of legislative guidance of any kind,* thereby attempting to clothe the members of this administrative agency with apparent power in their unguided discretion to give or withhold the benefits of the law in any given case or cases." (Emphasis supplied.)

The Court held, therefore, that the statute was violative of Article II, Section 1, of the North Carolina Constitution, which section inhibits the General Assembly from delegating its legislative powers to any other department or body.

It seems obvious that the statute before the Court in that case, set out in some detail herein, contained absolutely no guides for the determination of whether the construction and operation of the toll road would be in the public interest.

We think the problem before the Court now is entirely different from the problem before the Court in the *Turnpike* case. In order to reach a determination of the problem, we look at the ordinance it-

self as did the Court in the *Turnpike* case. When we do so, important differences and distinctions are apparent.

Section 1-1 of Article I sets out the purpose of the ordinance as follows:

> "The zoning regulations and districts as herein set forth have been made in accordance with a comprehensive plan and are designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health and general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; and to facilitate the adequate provisions of transportation, water, sewerage, schools, parks and other public requirements. These regulations have been made with reasonable consideration, among other things, as to the character of each district and its peculiar suitability for particular uses and with a view to conserving the value of builders and encouraging the most appropriate use of land throughout the county. Further, these regulations have been made with reasonable consideration for the expansion and development of each municipality within the county so as to provide for their orderly growth and development."

Section 1-3 of Article I provides: "In order to achieve the purposes of this ordinance as set forth, Guilford County, outside the zoning jurisdiction of incorporated municipalities, is hereby divided into nine (9) districts with the designations and purposes as listed below:". Among the listed districts is "A-1 Agricultural District. Primarily for agricultural purposes with provisions for single family residences and mobile homes and two family residences on large lots."

Section 3-10 of Article III is entitled "Regulations Governing Mobile Home Parks". This section provides that "a mobile home park may be established as a special exception in certain districts as prescribed by Article IV of this ordinance subject to the following conditions:". There follow fourteen enumerated and detailed conditions, the last of which provides that "The Board of Adjustment may attach any other reasonable and appropriate conditions or requirements necessary to accomplish the purpose of this ordinance."

Article IV tabulates permitted uses within the various zoning districts. A permitted use in the A-1 Agricultural District is "Mobile home parks as a special exception, subject to the provisions of Section 6-13 B and operated in accordance with the provisions of Sec-

tion 3-10 and the Guilford County Board of Health's regulations relating to the establishment and operation of mobile home parks."

Section 5-1(A) of Article V describes A-1 Agricultural District as follows:

"The A-1 Agricultural District is established as a district in which the principal use of land is for general agricultural purposes. In promoting the general purposes of this ordinance the specific intent of this Section is: to encourage the continued use of land for agricultural purposes; to prohibit scattered commercial and industrial uses of land; to prohibit any other use which would interfere with an integrated and efficient development of the land for more intensive use as the county population increases; and to discourage any use, which because of its character or size, would create unusual requirements and costs for providing public services, such as law enforcement, fire protection, water supply and sewage disposal before such services are generally needed."

Section 6-10 of Article VI establishes a Board of Adjustment consisting of five members and two alternate members to be appointed by the Guilford County Board of Commissioners. It provides for the term of office, filling vacancies, etc.

Section 6-13 of Article VI prescribes the powers and duties of the Board of Adjustment. Subsection A gives it the power of administrative review. Subsection B thereof is entitled "Special Exceptions: Conditions Governing Application Procedures" and is as follows:

"To hear and decide only such special exceptions as the Board is specifically authorized to pass on by the terms of this ordinance: to decide such questions as are involved in determining whether special exceptions should be granted; and to grant special exceptions in accordance with the principles, conditions, safeguards, and procedures specified in this ordinance, or to deny special exceptions when not in harmony with the purpose and intent of this ordinance. A special exception shall not be granted by the Board unless and until;

(1)   A written application for a special exception is submitted, indicating the section of this ordinance under which the special exception is sought and stating the grounds upon which it is requested.

(2)   A public hearing is scheduled and duly advertised by posting on the property for which the special exception is sought and in the Guilford County Courthouse a notice indi-

cating the time and place of the public hearing and other necessary information. Such notice shall be posted at least fifteen (15) days prior to the public hearing.

(3) The public hearing shall be held. Any party may appear in person, or by agent or attorney.

(4) The Board shall make a finding that it is authorized and empowered to grant a special exception under the section of this ordinance described in the application and that the granting of the special exception will not adversely affect the public interest. Violation of any conditions or safeguards applied by the terms of this ordinance or by the Board of Adjustment, when such conditions and safeguards are made a part of the terms under which a special exception is granted, shall be deemed a violation of this ordinance. It is the intent of this ordinance that a special exception granted subject to a condition be permitted only so long as such condition is complied with. In the event that any such condition be held invalid, for any reason, such holding shall have the effect of invalidating the grant of the special exception and rendering it null and void. The Board shall prescribe a time limit within which the action for which the special exception is required shall be begun and/or completed. Failure to begin and/or complete such action within the prescribed time limit shall void the special exception."

Appellants argue that through use of the power to grant exceptions under the ordinance, the result could be the change of the entire zoning area and virtual abandonment of the ordinance by reason of allowing the Board of Adjustment to grant an exception without safeguards or standards.

[2, 3] It seems appropriate here to note that we are not dealing with a section of an ordinance permitting variances but a section providing a procedure for granting a special exception. The variance and exception are designed to meet two entirely different needs. The variance contemplates a departure from the terms of the ordinance and is authorized where the literal enforcement of its terms would result in unnecessary hardship. G.S. 153-266.17. The exception contemplates a permitted use when, under the terms of the ordinance, the prescribed conditions therefor are met. It is expressly permissible in a given zone or district and is granted after a public hearing and upon a finding that all the conditions of the ordinance pertaining thereto are satisfied. G.S. 153-266.17. *Krœmer v. Zoning Board of Review,* 98 R.I. 328, 201 A. 2d 643; *Stacy v. Montgomery Co.,* 239 Md. 189, 210 A. 2d 540.

"While a special permit may be granted only where it is authorized by the ordinance, and upon proof that the standards imposed by the ordinance have been met, the standards for the issuance of special permits and exceptions are usually less stringent than in the case of variances." Anderson, *American Law of Zoning*, § 1403.

A mobile home park is a use allowed by the Guilford County Zoning Ordinance. Requirements as to size of the mobile home lots, street requirements, number of parking spaces for automobiles, etc., are specifically set out in detail in Section 3-10. The ordinance provides that it is the duty of the Board of Adjustment to decide such questions as are involved in determining whether special exceptions shall be granted, and the Board is to grant special exceptions *"in accordance with the principles, conditions, safeguards, and procedures specified in this ordinance, or to deny special exceptions when not in harmony with the purpose and intent of this ordinance."* (Emphasis supplied.)

It is further provided that the Board shall make a finding that it is authorized and empowered to grant the exception and that such a grant "will not adversely affect the public interest."

A case in which this precise question has been discussed and decided by our Supreme Court has not been called to our attention. We do find that similar provisions in zoning ordinances have been passed upon by other states.

*Florka v. City of Detroit*, 369 Mich. 568, 120 N.W. 2d 797, involved an ordinance which allowed special exceptions in a business zone. It provided: "The following uses, or other uses similar thereto, subject to the approval of the commission as being not injurious to the surrounding neighborhood and not contrary to the spirit and purpose of this ordinance . . ." The question before the Court was whether that provision was unconstitutional as failing to provide sufficient standards by which the planning commission could be governed in passing upon an application. In upholding the validity of the provision, the Court said that the City of Detroit had the right to adopt reasonable zoning regulations. "In connection with the exercise of its legislative authority it had the right to delegate to administrative officers the determination of facts which should control the application of legislative provisions." The Court further said, "Clearly it was intended that the commission should proceed to determine whether the operation of the business sought to be carried on by virtue of a required permit would injuriously affect other properties and the owners and occupants thereof within the im-

mediate district. This involved consideration of the inherent nature of the proposed business, the means of operation thereof, the extent of operations contemplated, and other pertinent facts. Likewise, the requirement of a finding that any such business, in order to be approved, will be operated in accord with the general purpose and intent of the zoning ordinance necessitates careful consideration of the intended project and whether it will tend to serve the general welfare of the community or result to the prejudice thereof. Such standards are not inherently vague and uncertain but obviously require the ascertainment of facts and a determination as to whether the application shall be approved in accordance therewith."

In *Burnham v. Board of Appeals of Gloucester*, 333 Mass. 114, 128 N.E. 2d 772, the ordinance provision before the Court was: "No permit [for a motel] shall be granted by the Board of Appeals without considering the effects upon the neighborhood and the City at large." In holding the standard sufficient, the Court noted that zoning is a local matter, and weight must be accorded the judgment of the local legislative body, since it is familiar with local conditions. The Court recognized that the degree of certainty with which standards for the exercise of discretion must be set up will vary with the situation when it said: "It would have been difficult, if not impossible, to specify in what circumstances permits should be granted and in what circumstances denied. That would depend on numerous unforeseeable factors. The board was charged with the quasi judicial duty of considering the effect of the construction of a motel on the neighborhood and the city and to pass upon the application in each instance 'under the serious sense of responsibility imposed upon them by their official positions and the delicate character of the duty entrusted to them.' (citing cases) We do not think that greater particularity was required."

However, in *Clark v. Board of Appeals of Newbury*, 348 Mass. 408, 204 N.E. 2d 434, the Court held invalid that part of an ordinance providing "Commercial or industrial structures may be erected with permission of the Selectmen, but no permit shall be granted until by public hearing the Selectmen are assured that the proposed business or industry is for the best interests of the Town and not injurious or obnoxious to the neighboring properties" on the basis that no sufficient standards were given and the result would be to allow spot zoning which would directly contravene the basic objective of the enabling statute. This case is factually distinguishable from the *Burnham* case, *supra*, and does not overrule *Burnham*.

We recognize, of course, that an exhaustive discussion of both ap-

proved and disapproved standards would reveal overlappage which cannot be satisfactorily explained. Anderson, *American Law of Zoning,* § 15.09 (1968) suggests that "(t)here may be a trend toward more liberal construction of standards." Indicative thereof is the discussion by the Virginia Court in *Ours Properties, Inc. v. Ley,* 198 Va. 848, 96 S.E. 2d 754. The ordinance under consideration, in a list of special uses permitted in an M-1 zone, included ". . . and any other industrial establishment for which *satisfactory evidence* is presented that such establishment will not adversely affect any contiguous district through the dissemination of smoke, fumes, dust, odor, or noise or by reason of vibration and that such establishment will not result in any unusual danger of fire or explosion." It was argued that the term "satisfactory evidence" is so vague and indefinite that it did not furnish a sufficient standard to guide the inspector in exercising its discretion. The Court refused to strike down the provision saying that it is presumed that the ordinance is valid and that the public officials will discharge their duties honestly and in accordance with the law. The Court recognized that a legislative body does not sit continuously and that it is necessary to delegate discretionary power to an administrative agency so that it can determine some fact or state of things upon which the laws of the legislative body are to operate. "Although there is some conflict among the decisions, a majority of the courts hold that considerable freedom to exercise discretion and judgment must be accorded officials in charge under a zoning ordinance, and that the courts should be liberal in upholding such ordinances in order to facilitate their proper administration."

Our Court, in *Harden v. Raleigh,* 192 N.C. 395, 135 S.E. 151, in speaking of the Board of Adjustment under the Zoning Ordinance of the City of Raleigh, said: "It is evident, we think, that the board of adjustment is clothed, if not with judicial, at least with *quasi-*judicial power, it being its duty to investigate facts and from its investigation to draw conclusions as a basis of official action and to exercise discretion of a judicial nature. . . . Within the class of *quasi-judicial acts fall the board's conclusions as to whether the proposed building would be noxious or offensive or detrimental to the public safety or welfare by reason of its situation or the surrounding conditions;".* (Emphasis supplied.)

In *Lee v. Board of Adjustment,* 226 N.C. 107, 37 S.E. 2d 128, the action of the Board of Adjustment of Rocky Mount in granting a variance was before the Court. The Court reiterated that "(t)he board of adjustment authorized in the zoning statute, G.S. 160-178, is an administrative agency, acting in a *quasi-*judicial capacity.",

but in exercising its discretion, it must abide by the rules "provided by its charter — the local ordinance enacted in accord with and by permission of the State zoning law." Its determination must be " 'in harmony with their general purpose and intent and in accordance with general or specific rules therein contained,' G.S. 160-172, 'so that the spirit of the ordinance shall be observed, public safety and welfare secured, and substantial justice done.' G.S. 160-178; Baker, Legal Aspects of Zoning, 98; Bassett, Zoning, 131-132."

It is interesting to note that the language of G.S. 160-172 granting cities and towns the power to regulate by zoning and G.S. 153-266.10 granting the same power to boards of commissioners of counties are almost identical in phraseology as are G.S. 160-178 providing for a board of adjustment under a city ordinance and G.S. 153-266.17 providing for a board of adjustment under a county ordinance.

G.S. 153-266.17 provides: "The zoning ordinance may provide that the board of adjustment may permit special exceptions to the zoning regulations in the classes of cases or situations and in accordance with the principles, conditions, safeguards, and procedures specified in the ordinance."

[4, 5]    It is manifest, therefore, that the Legislature may delegate to the Board of Adjustment, as a *quasi*-judicial body, the authority to determine facts and therefrom to draw conclusions as a basis of its official action. *Harden v. Raleigh, supra.* It is also manifest that a standard must be given to guide the board in its determination. Because of the very nature of zoning ordinances and the unforeseeable factors involved, this standard frequently must necessarily be general, requiring ascertainment of facts. *Florka v. City of Detroit, supra.* Further, in determining the sufficiency of the standard, the purpose and intent of the ordinance is to be considered. *Florka v. City of Detroit, supra.* See also *New York Central Securities Corp. v. United States of America,* 287 U.S. 12, 53 S. Ct. 45, 77 L. Ed. 138, where the question was the constitutionality of a clause in the Interstate Commerce Commission Act providing that the Commission could authorize the acquisition of control of one carrier by another if such an acquisition would be "in the public interest." To the argument that this was a vague and uncertain standard, the Supreme Court said: "It is a mistaken assumption that this is a mere general reference to public welfare without any standard to guide determinations. The purpose of the Act, the requirements it imposes, and the context of the provision in question show the contrary."

[1]    Testing the provision here before us by these principles, we

are constrained to say that the standards are adequate and the provision valid. The purpose of the ordinance is ·clearly set out. The description of A-1 Agricultural District discourages "any use, which because of its character or size, would create unusual requirements and costs for providing public services, such as law enforcement, fire protection, water supply and sewage disposal before such services are generally needed." The ordinance clearly details the conditions to be met before a mobile home park can be granted for construction in that district. The Board of Adjustment is authorized and empowered: "to decide such questions as are involved in determining whether special exceptions should be granted, and to grant special exceptions in accordance with the principles, conditions, safeguards, and procedures specified in this ordinance, or to deny special exceptions when not in harmony with the purpose and intent of this ordinance." Based on facts found by it in accordance with these standards the Board is directed, as a condition of granting an exception, to make a finding that the grant "will not adversely affect the public interest." In our opinion this is in keeping with the statutory authority given by G.S. 153-266.17: "The zoning ordinance may provide that the board of adjustment may permit special exceptions to the zoning regulations in classes of cases or situations and in accordance with the principles, conditions, safeguards, and procedures specified in the ordinance." In our view of the case, it does not come within the rationale of the *Turnpike* case, where there were no standards of any kind in the statute delegating the authority.

It would be difficult, if not impossible, to designate in minute detail in what circumstances exceptions should be granted and in what circumstances denied. That would depend on a great many unforeseeable factors. The Board of Adjustment is charged with discouraging in an A-1 Agricultural District any use which would create unusual requirements and costs for providing public services, such as law enforcement, fire protection, water supply and sewage disposal before such services are generally needed. It is instructed, in determining whether a special exception should be granted, to grant an exception in accordance with the principles, conditions, safeguards, and procedures specified in the ordinance and to deny an exception when not in harmony with the purpose and intent of the ordinance, and to find as a fact that the grant will not adversely affect the public interest before granting an exception. We do not think any greater particularity is required.

Appellants also stressfully contend that the trial court erred in finding as a fact that there was sufficient evidence before the Board of Adjustment to support a finding that granting the special excep-

tion applied for would not adversely affect the public interest, and they rely on *Jarrell v. Board of Adjustment,* 258 N.C. 476, 128 S.E. 2d 879.

**[6]** The statute, G.S. Art. 20, Ch. 153, under which the county commissioners of Guilford County adopted the Guilford County Zoning Ordinance, provides that every decision of the Board of Adjustment "shall be subject to review by the superior court by proceedings in the nature of certiorari." G.S. 153-266.17. *Durham County v. Addison,* 262 N.C. 280, 136 S.E. 2d 600. The writ thus permitted is a writ to bring the matter before the court upon the evidence presented by the record itself for review of alleged errors of law. *Lee v. Board of Adjustment, supra; In re Pine Hill Cemeteries, Inc.,* 219 N.C. 735, 15 S.E. 2d 1.

> "The decisions of the board are final, subject to the right of the courts to review errors in law and to give relief against its orders which are arbitrary, oppressive, or attended with manifest abuse of authority. (citing cases)" *Lee v. Board of Adjustment, supra,* at 109. See also *Durham County v. Addison, supra; Yancey v. Heafner,* 268 N.C. 263, 150 S.E. 2d 440.

The *Jarrell* decision is discussed and explained in *Craver v. Board of Adjustment,* 267 N.C. 40, 147 S.E. 2d 599, thusly:

> ". . . In *Jarrell* the zoning board was required to find as a fact whether on the day the zoning ordinance became effective the petitioner's property was in use as a one family or as a two family unit — if a two family unit, the owner had the right to continue its use as such — if a one family unit the owner was in violation of the ordinance by using it for two families. The dispute presented a question of fact. The finding involved a property right. The courts are bound by the findings if supported by competent, material, and substantial evidence. Obviously, when material findings of fact must be made on conflicting testimony witnesses should be sworn. To that end G.S. 160-178 authorizes the chairman or acting chairman of the board 'to administer oaths to the witnesses in any matter coming before the board.'"

**[7]** Here the record clearly shows that all witnesses at both hearings were sworn. Here, as was the case in *Craver,* the petition is one addressed to the discretion of the Board of Adjustment.

The evidence presented to the Board of Adjustment appears in the record in the minutes of the meetings. These minutes include in narrative form the testimony of the persons appearing before the Board of Adjustment and statements made by counsel for the appli-

cant and counsel for the protestants, appellants here. We have carefully examined the record.

Our examination of the evidence submitted to the Board of Adjustment discloses sufficient evidence to support its findings. Based on the evidence, the Board could have found the facts as contended by applicant or contrary thereto. In this situation its findings are conclusive. *In re Appeal of Hastings,* 252 N.C. 327, 113 S.E. 2d 433.

The trial court was correct in sustaining the Board's order granting the exception.

Affirmed.

Mallard, C.J., and Campbell, J., concur.