NO. COA13-447

NORTH CAROLINA COURT OF APPEALS

Filed: 18 February 2014

MOUNT ULLA HISTORICAL
PRESERVATION SOCIETY, INC.,
et al.,
    Petitioners

v.
                                    Rowan County
                                      No. 11 CVS 2793
ROWAN COUNTY, DAVIDSON COUNTY
BROADCASTING, INC., RICHARD and
DORCAS PARKER, and MAURICE E.
and MARY LEE PARKER,
    Respondents

Appeal by respondent from order entered 27 September 2012 by Judge W. David Lee in Rowan County Superior Court. Heard in the Court of Appeals 23 October 2013.

    *Smith Moore Leatherwood LLP, by Thomas E. Terrell, Jr. and Elizabeth Brooks Scherer; Kluttz, Reamer, Hayes, Randolph, Adkins & Carter, L.L.P., by Richard R. Reamer; and Sherrill and Cameron, PLLC, by Carlyle Sherrill, for petitioner-appellees.*

    *Parker Poe Adams & Bernstein LLP, by Anthony Fox and Benjamin Sullivan, for respondent-appellant Rowan County.*

CALABRIA, Judge.

Respondent Rowan County ("the County") appeals from the trial court's order reversing the decision of the Rowan County Board of Commissioners ("the Board") to issue a conditional use permit

("CUP") to respondent Davidson County Broadcasting, Inc. ("DBCI") on the basis that the CUP application was barred by the doctrines of *res judicata* and collateral estoppel. We affirm.

## I. Background

On 18 January 2005, DCBI applied to the Board for a CUP ("the 2005 CUP application") to construct a 1,350 foot radio tower ("the tower") on property owned by respondents Richard and Dorcas Parker ("the Parkers"). After conducting a public hearing regarding the application, the Board voted to deny the CUP. The written decision denying the application indicated that it was denied because the proposed tower would pose an air safety hazard to Miller Airpark, a nearby private airport.

DCBI and the Parkers then filed a petition for writ of *certiorari* in Rowan County Superior Court to review the Board's decision. The court granted the petition and affirmed the denial of the CUP. DCBI and the Parkers appealed to this Court, which affirmed the decision of the superior court. *Davidson Cty. Broadcasting, Inc. v. Rowan Cty. Bd. of Comm'rs*, 186 N.C. App. 81, 649 S.E.2d 904 (2007)("*DCBI I*").

On 26 May 2010, DCBI applied to the Board for a CUP for a 1,200 foot radio tower ("the 2010 CUP application") in substantially the same proposed location as the tower in the 2005

application that had been denied.  On 24 March 2011, DCBI filed a supplemental application to include property owned by respondents Maurice E. Parker and Mary Lee Parker as a fall zone.  Petitioners[1] moved to dismiss the 2010 CUP application as being barred by the doctrines of *res judicata* and collateral estoppel.  The Board denied the motion on 5 July 2011.  Beginning 1 August 2011, the Board held a quasi-judicial hearing to consider the new application.  On 6 September 2011, the Board entered a written decision approving the CUP.  The Board found, *inter alia*, that the proposed tower would not create any hazardous safety conditions.

On 3 October 2011, petitioners filed a petition for writ of *certiorari* in Rowan County Superior Court, seeking review of the Board's CUP approval.  Petitioners once again argued that the 2010 CUP application was barred by *res judicata* and collateral estoppel.  Petitioners also alleged that the approved CUP did not conform to the Rowan County Zoning Ordinance.

On 27 September 2012, the superior court entered an order reversing the Board's approval of the 2010 CUP application.  The

---

[1] Petitioners consist of Mt. Ulla Historical Preservation Society, Inc., Miller Air Park Owners Association, and several dozen private individuals.

court concluded that the 2010 CUP application was barred by *res judicata* and collateral estoppel. Respondents appeal.[2]

## II. Standard of Review

"Special and conditional use permit decisions are quasi-judicial zoning decisions." *County of Lancaster v. Mecklenburg County*, 334 N.C. 496, 508, 434 S.E.2d 604, 613 (1993). "Our task, in reviewing a superior court order entered after a review of a board decision is two-fold: (1) to determine whether the trial court exercised the proper scope of review, and (2) to review whether the trial court correctly applied this scope of review." *Whiteco Outdoor Adver. v. Johnston County Bd. of Adjust.*, 132 N.C. App. 465, 468, 513 S.E.2d 70, 73 (1999).

> The proper standard for the superior court's judicial review depends upon the particular issues presented on appeal. When the petitioner questions (1) whether the agency's decision was supported by the evidence or (2) whether the decision was arbitrary or capricious, then the reviewing court must apply the whole record test. However, [i]f a petitioner contends the [b]oard's decision was based on an error of law, de novo review is proper. Moreover, the trial court, when sitting as an appellate court to review a [decision of a quasi-judicial body], must set forth sufficient information in its order to reveal the scope of review utilized and the application of that review.

---

[2] While all respondents entered notice of appeal from the superior court's order, only respondent Rowan County filed a brief with this Court.

*Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 13, 565 S.E.2d 9, 17 (2002) (internal quotations and citations omitted).

### III. *Res Judicata*

The County argues that the superior court erred by reversing the Board's approval of the 2010 CUP application because the application was barred by the doctrine of *res judicata*. We disagree.

"Under the doctrine of *res judicata*, a final judgment on the merits in a prior action in a court of competent jurisdiction precludes a second suit involving the same claim between the same parties or those in privity with them." *Nicholson v. Jackson Cty. School Bd.*, 170 N.C. App. 650, 654, 614 S.E.2d 319, 322 (2005) (internal quotations and citation omitted). "The purpose of the doctrine of *res judicata* is to protect litigants from the burden of relitigating previously decided matters and to promote judicial economy by preventing unnecessary litigation." *Holly Farm Foods v. Kuykendall*, 114 N.C. App. 412, 417, 442 S.E.2d 94, 97 (1994). "[W]hether the doctrine of *res judicata* operates to bar a cause of action is a question of law reviewed *de novo* on appeal." *Housecalls Home Health Care, Inc. v. State*, ___ N.C. App. ___, ___, 738 S.E.2d 753, 758 (2013).

Our Supreme Court has specifically held that *res judicata* "is available with respect to the proceedings and final decision of a judicial or *quasi*-judicial body." *Little v. Raleigh*, 195 N.C. 793, 795, 143 S.E. 827, 828 (1928). In *Little*, a building permit to construct a gasoline filling station was denied by the building inspector and the board of adjustment, and the denial was upheld by our Supreme Court. *See Harden v. Raleigh*, 192 N.C. 395, 135 S.E. 151 (1926). The property owner then petitioned the building inspector to reopen the case. *Little*, 195 N.C. at 793, 143 S.E. at 827. The building inspector reversed his prior determination and the previously-denied building permit was issued. *Id.* The issuance of the permit was upheld by the board of adjustment and the superior court. *Id*. at 793-94, 143 S.E. at 827-28. On appeal, our Supreme Court reversed the issuance of the building permit on the basis of *res judicata*:

> There is no allegation, no proof, and no finding by the trial court that the facts in the case at bar are in anywise different from the facts in the case of *Harden v. Raleigh*. Indeed, the trial judge finds that Mrs. Harden applied to the building inspector "to reopen and rehear its former decision upon the building of the filling station upon her said lot."
>
> Upon these circumstances we are constrained to hold that the plea of *res judicata*, duly filed in apt time by the petitioners, was available, and therefore that the owner of the lot is not

> entitled to reopen and rehear the case upon the identical facts presented in the former record.

*Id.* at 795, 143 S.E. at 828.

*Little* was subsequently distinguished by *In re Broughton Estate*, 210 N.C. 62, 185 S.E. 434 (1936). In *Broughton*, a permit was issued to construct a filling station. *Id.* at 62, 185 S.E. at 434. The permit issuance was challenged because, *inter alia*, a similar application had been denied three years earlier. *Id.* The superior court reversed the granting of the permit based upon *Little*, concluding that there had been "no substantial change in conditions" since the prior permit denial. *Id.* at 62-63, 185 S.E. at 434. That decision was then appealed to our Supreme Court, which reversed the superior court after determining that *Little* was inapplicable:

> The trial court held that the case was controlled by the decision in *Little v. Raleigh*, 195 N. C., 793, 143 S. E., 827. The two cases are not alike. In the first place, the cited case was on application "to reopen and rehear" a former decision which had received judicial approval *sub nomine Harden v. Raleigh*, 192 N. C., 395, 135 S. E., 151. Not so here. In the next place, *Little's case*, *supra*, was not only identical in allegation and fact with the original case, but was in truth the same case. Here, the traffic conditions as found by the board, "have materially changed since the former application was acted on . . . ."

*Id.* at 63, 185 S.E. at 435.

The County contends that, when read together, *Little* and *Broughton* stand for the proposition that *res judicata* applies to quasi-judicial land use decisions only when the applicant is attempting to "reopen and rehear the case upon the identical facts presented in the former record." *Little*, 195 N.C. at 795, 143 S.E. at 828. However, the County reads the *Broughton* Court's interpretation of *Little* too narrowly.

The *Broughton* Court determined that the use of *res judicata* by the trial court was improper based upon two differences between the permit approval before it and the permit approval at issue in *Little*. First, the permit issued in *Little* was based upon an "application 'to reopen and rehear' a former decision which had received judicial approval . . . ." *Broughton*, 210 N.C. at 63, 185 S.E. at 435. Second, the Court noted that "the traffic conditions as found by the board, 'have *materially changed* since the former application was acted on . . . .'" *Id.* (emphasis added). Thus, the *Broughton* Court did not conclude that *res judicata* did not apply merely because the two applications at issue in that case were not exactly the same. The Court's conclusion also depended upon the board's finding that there was a material change in conditions between the prior permit application and the subsequent

permit application. This requirement of a material change in order to preclude the use of the defense of *res judicata* for quasi-judicial land use decisions is consistent with the law in other jurisdictions which have considered the question, *see*, *e.g.*, *Curless v. County of Clay*, 395 So. 2d 255, 258 (Fla. Dist. Ct. App. 1981); *Whittle v. Board of Zoning Appeals*, 125 A.2d 41, 46 (Md. 1956); *Fisher v. City of Dover*, 412 A.2d 1024, 1027 (N.H. 1980); and *Cohen v. Fair Lawn*, 204 A.2d 375, 377 (N.J. Super. Ct. App. Div. 1964), as well as with general *res judicata* principles. *See* Restatement (Second) of Judgments § 24 cmt. f. (1982)("Material operative facts occurring after the decision of an action with respect to the same subject matter may in themselves, or taken in conjunction with the antecedent facts, comprise a transaction which may be made the basis of a second action not precluded by the first.").

Although our Courts have not specifically defined what constitutes a material change, the consensus among other jurisdictions which have analyzed whether *res judicata* bars a quasi-judicial land use decision appears to be that

> [t]he change in conditions or circumstances which would justify the reconsideration of an action must be a change in the particular circumstance or condition which induced the prior denial. The change in circumstances must be such that the application for the same or

> a substantially similar special exception or variance no longer can be characterized as the same claim.

83 Am. Jur. 2d Zoning and Planning § 700 (2013)(footnotes omitted).

This definition of material change makes sense in the context of quasi-judicial land use decisions because

> [w]hen the facts and circumstances which actuated an order or a decision are alleged and shown to have so changed as to vitiate or materially affect the reasons which produced and supported it and no vested rights have intervened, it is reasonable and appropriate to the functions of the board that the subject-matter be re-examined in the light of the altered circumstances.

*St. Patrick's Church Corp. v. Daniels*, 154 A. 343, 345 (Conn. 1931).

We find the preceding authorities persuasive and utilize them to formulate the following definition of "material change" in the context of quasi-judicial land use decisions in North Carolina: a material change which precludes the use of the defense of *res judicata* occurs when the specific facts or circumstances which led to the prior quasi-judicial land use decision have changed to the extent that they "vitiate . . . the reasons which produced and supported" the prior decision such that the application "can no longer can be characterized as the same claim." *Id.*; 83 Am. Jur. 2d Zoning and Planning § 700.

In the instant case, the 2005 CUP application was denied because the proposed tower was determined to be a safety hazard to Miller Airpark. *See DCBI I,* 186 N.C. App. at 91-92, 649 S.E.2d at 912. Accordingly, in order to avoid being barred by *res judicata*, DCBI's 2010 CUP application must have materially changed the design of the proposed tower in such a way as to vitiate the concerns regarding air safety which led to the denial of the 2005 CUP application.

Although the Board denied petitioners' motion to dismiss on the basis of *res judicata*, it did not include, as part of its written decision approving the 2010 CUP application, any findings which suggest that there was a material change from the denied 2005 CUP application. However, by denying petitioners' motion to dismiss, the Board necessarily found that there was a material change between the two applications. This inference is consistent with Rowan County Commissioner Jim Sides, Jr.'s explanation of his motion to deny petitioners' motion to dismiss:

> [t]here has been considerable change in this application from the previous application, and I realize that the previous decision was made based primarily on safety factors. We do not know, at this point, based on a 1200 feet (sic) tower versus a 1350 feet (sic) tower, what the facts would be in relation to safety. Based on that, I would move against the motion to dismiss . . . ."

The County makes substantially the same argument to this Court, contending that the lowering of the tower by 150 feet in the 2010 CUP application was a material change that would preclude the use of *res judicata*.

Prior to determining whether the Board's finding of a material change was correct, we must first determine the proper standard of review, which our Courts have not explicitly considered previously. The consensus from other jurisdictions is that the determination of whether a subsequent application demonstrates a material change from a prior application is a factual question, with deference given to the quasi-judicial body's finding. *See Russell v. Bd. of Adjustment of Borough of Tenafly*, 155 A.2d 83, 88 (N.J. 1959)("Whether the requirement [of a material change] has been met is for the board, in the first instance, to determine. This finding, as any other made by the board, will be overturned on review only if it is shown to be unreasonable, arbitrary or capricious." (internal citation omitted)); *Freeman v. Ithaca Zoning Bd. of Appeals*, 403 N.Y.S.2d 142, 143 (N.Y. App. Div. 1978)("[I]t is for the board to determine whether or not changed facts or circumstances are presented and, in so doing, it may give weight even to slight differences not easily discernible[.]" (internal quotations and citation omitted). This deferential

standard is consistent with *Broughton*, in which our Supreme Court overturned the superior court's conclusion "that there had been no substantial change in conditions" based upon the board of adjustment's finding that "traffic conditions . . . 'have materially changed since the former application was acted on . . . .'" 210 N.C. at 63, 185 S.E. at 434-35. Accordingly, we conclude that the deferential whole record test applies to the Board's finding of a material change. We note that the superior court correctly applied this standard of review below, holding that "[a] whole record review . . . fails to disclose competent, material or substantial evidence that the height variance materially alters the proposed use from that use proposed in the earlier application."

"When utilizing the whole record test, . . . the reviewing court must examine all competent evidence (the "whole record") in order to determine whether the agency decision is supported by substantial evidence." *Mann Media*, 356 N.C. at 14, 565 S.E.2d at 17 (internal quotations and citation omitted). "The 'whole record' test does not allow the reviewing court to replace the Board's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had

the matter been before it *de novo.*" *Thompson v. Board of Education*, 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977).

The County is correct that the lowering of the tower by 150 feet constituted a change from the denied 2005 CUP application. However, a review of the whole record does not reveal any evidence that this change would undermine the reasoning behind the denial of the 2005 CUP application. The County points to general evidence presented during the 2010 CUP application hearing that the proposed 1,200 foot tower would be safe for air travel, but fails to connect this evidence in any way to the change in the height of the tower from the 2005 CUP application. The safety evidence cited by the County would be equally applicable to both a 1,350 foot tower and a 1,200 foot tower. As this Court explicitly recognized in *DCBI I*, the 2005 CUP application was supported by "evidence from which the Board could have found that the tower would not pose an unreasonable or unjustifiable safety hazard" to air travel, but the Board nonetheless found that evidence to be outweighed by other evidence that the tower would create such a hazard. 186 N.C. App. at 92, 649 S.E.2d at 913. Since there is nothing in the whole record which suggests that the prior evidence regarding the tower's potential safety hazard to air travel from the 2005 CUP application hearing was vitiated by lowering the tower by 150 feet, the Board's

finding in the instant case that there was a material change in the 2010 CUP application was not supported by the evidence.  *See St. Patrick's Church*, 154 A. at 345.  The whole record reflects that the Board essentially considered the same information in both the 2005 and 2010 CUP applications and reached different decisions.  *Res judicata* forbids such a result.  *See King v. Grindstaff*, 284 N.C. 348, 355, 200 S.E.2d 799, 804 (1973)("(W)hen a fact has been agreed upon or decided in a court of record, neither of the parties shall be allowed to call it in question, and have it tried over again at any time thereafter, so long as the judgment or decree stands unreversed." (internal quotation and citation omitted)).  Ultimately, as there was no material change between the 2005 and 2010 CUP applications, *res judicata* barred the Board from reconsidering its previous decision.  Therefore, the superior court properly concluded that *res judicata* required the Board to dismiss the 2010 CUP application.  This argument is overruled.

## IV.  Conclusion

*Res judicata* generally applies to quasi-judicial land use decisions unless there is a material change in the facts or circumstances since the prior decision was rendered.  In the instant case, a whole record review provides no evidence that the lowering of the proposed tower by 150 feet in the 2010 CUP

application constituted a material change.  Therefore, the superior court properly concluded that the 2010 CUP application was barred by *res judicata*.  The superior court's order is affirmed.

Affirmed.

Judges BRYANT and HUNTER, Jr., Robert N. concur.