R. ANDERSON et al., Appellants, v. L. A. JESTER et al., Appellees.

SEPTEMBER 28, 1928.

*Stewart & Hextell* and *Parrish, Cohen, Guthrie, Watters & Halloran,* for appellants.

*Reson S. Jones, Eskil C. Carlson, Chauncey A. Weaver,* and *George W. Vest,* for L. A. Jester *et al.,* appellees.

*Charlton & Parker,* for Norwood-White Coal Company, appellee.

Morling, J.—The trial court refused to hear testimony offered by plaintiffs in support of the allegations of their petition for writ of certiorari, giving as his reason that he found no illegality appearing upon the face of the return, and on the return had no doubt as to the legality of the action of the board. Our view of the question of the correctness of this ruling is determinative of the appeal.

The ruling demands inquiry as to the method and scope of review by the trial court permitted by the legislative enactment (Code of 1927, Section 6466 *et seq.,*) granting to any person aggrieved by the decision of the board of adjustment the right to petition for writ of certiorari. Subsidiary inquiries are: 1. What questions may be raised on such special writ of certiorari? 2. Is the right to trial *de novo* which the statute gives limited to trial *de novo* on the case as set forth in the return to the writ? 3. May the plaintiff, on the requisite allegation of fact in his petition for the writ, be entitled, as matter of right, to introduce evidence? These subsidiary questions are inseparable in discussion, and no attempt will be made to consider them independently of each other.

The petition for the writ now before us makes allegations such as the following: That the action of the board of adjustment "is an attempt to give a special privilege to the Norwood-White Coal Company to the exclusion of all others, in that it permits the Norwood-White Coal Company to establish a 'heavy industry' within the residential district, contrary to the spirit of the zoning ordinance;" that it is proposed to operate the mine as a wagon mine, and all the coal mined will be removed by trucks or wagons, "all of which will injure the life and health of children attending" large public and private schools alleged to be located in the vicinity, "and will injure the lives of the residents in said vicinity and of the people frequenting" a large public park in that locality; that there was no evidence before the board that the variation asked by the Norwood-White Coal Company would not be contrary to public interest, but, on the contrary, the evidence and arguments presented were conclusive and undisputed that the establishment of the mine "was contrary to public interest, in that it would cause a lot of noise,

and also the refuse from said coal mine, commonly known as a gob or slag pile, would give forth obnoxious odors and gas, to the detriment of the health and happiness of the residents in that immediate vicinity and to the hundreds of school children in attendance at both of said schools.'' It was alleged that the evidence without dispute showed that, in order to market the coal, approximately 266 trips by coal truck would have to be made every day in front of the school buildings and over the streets, to the irreparable injury of the public interest; that the undisputed evidence before the board was to the effect that all of the coal could be removed through another mine then in operation, for the same royalty that was to be paid by the Norwood-White Coal Company, and that hardship to the property owners would result from denial of permit. Numerous other allegations were made, to the effect that the action of the board was contrary to the spirit of the ordinance and to the public interest, and arbitrary.

The return to the writ does not show whether the board formally took evidence, but the arguments assume that facts not shown in the return were known to the board.

At the trial the defendants and intervener ''moved to quash the petition of the plaintiffs and the amendment thereto,'' and plaintiffs resisted, for reasons which need not be here specifically set out.

The application for variance states that it is conservatively estimated that 800,000 tons of coal can be removed from the premises in the vicinity of the proposed shaft, and within ten years. It was proposed that all slate, slag, and refuse should be kept in the mine, and used to back fill rooms and entries, except so much as might be needed in constructing a road. The permit complained of was granted on the condition that this be done, and is limited in time to seven years.

Plaintiffs offered to introduce testimony to the effect that the coal stratum there was about three and one-half feet thick, and in order to get the necessary entries to comply with the state law, a large amount of dirt, slate, and refuse would have to be removed, and it was impracticable to open and operate the mine without producing large slag or gob piles, and that a dangerous and detrimental gas, heavier than air, would be generated from the mine and the slag piles; that the mine would

have to be operated as a wagon or truck mine, would constitute a "heavy industry," and conditions were such that the use of the trucks to the extent required would be ruinous to the streets and perilous to the large number of school children attending the local schools; that the district was suitable for residence purposes only; that there were in the vicinity of the proposed mine about 200 houses of the average value of $5,000 each, the market value of which would be depreciated by the mine from 15 to 25 per cent, and that the district would be depreciated; that all of the coal could be removed through an existing railroad mine; and that the undisputed evidence before the board was to that effect. Without detailing the offers, it is sufficient to say that the evidence, if received, would tend to show that the granting of the permit would not be in harmony with the general purpose of the zoning ordinance, would be contrary to its spirit, the public interest, and substantial justice, and its denial would not result in unnecessary hardship. Notwithstanding the ostensible limitation of time, and the requirement for keeping slag in the mine, it might well, on the allegations and proffered evidence, be made to appear that most serious and permanent conditions, detrimental to the district and the public good, would result from the operation.

This is the first case arising out of the municipal zoning law to come before this court. The law, with some incidental variations, conforms to a standard in force in a number of states. See 3 McQuillin on Municipal Corporations (2d Ed.), Section 1051 *et seq.* Its constitutionality in general and various phases of its interpretation and meaning have come before a number of courts, whose labors thereon have greatly facilitated our investigation and thrown much light on the questions here involved. With few exceptions, the constitutionality of such laws has been sustained, as a valid exercise of the police power, in the interest of public peace, order, morals, health, safety, comfort, convenience, and the general welfare. *City of Des Moines v. Manhattan Oil Co.*, 193 Iowa 1096; *Nectow v. Cambridge*, 277 U. S. 183 (72 L. Ed. 842); *Village of Euclid v. Ambler Realty Co.*, 272 U. S. 365 (71 L. Ed. 303); *Zahn v. Board of Public Works*, 274 U. S. 325 (71 L. Ed. 1074); *Gorieb v. Fox*, 274 U. S. 603 (71 L. Ed. 1228); *Hadacheck v. Sebastin*, 239 U. S. 394 (60 L. Ed. 348); 3 McQuillin on Municipal Corporations (2d Ed.),

Section 1043 *et seq.*; *Opinion of the Justices to the House of Representatives*, 234 Mass. 597 (127 N. E. 525); *City of Aurora v. Burns*, 319 Ill. 84 (149 N. E. 784); *Gilfillan's Permit*, 291 Pa. St. 358 (140 Atl. 136); *York Harbor Village Corp. v. Libby*, 126 Me. 537 (140 Atl. 382); *In re Wulfsohn v. Burden*, 241 N. Y. 288 (150 N. E. 120); *Magruder v. Redwood City* (Cal.), 265 Pac. 806; *State ex rel. Cadillac Co. v. Christopher*, 317 Mo. 1179 (298 S. W. 720). See "Legal Aspects of Zoning," by Newman F. Baker, 26, 43, 113 *et seq.*, 141 *et seq.*; *Bradley v. Board of Zoning Adjustment*, 255 Mass. 160 (150 N. E. 892).

Arbitrary and unreasonable restrictions upon the use and enjoyment of property, prohibition of use which does not interfere with the equally rightful use and enjoyment by others of their property, or with the paramount rights of the public, or deprivation of property without due process of law, cannot be sustained, under zoning laws or ordinances enacted in the guise of an exercise of the police power. *Rehmann v. City of Des Moines*, 200 Iowa 286; *Pennsylvania Coal Co. v. Mahon*, 260 U. S. 393 (67 L. Ed. 322); *Pacific Palisades Assn. v. City of Huntington Beach*, 196 Cal. 211 (237 Pac. 538); *State ex rel. Banner Gr. Co. v. Houghton*, 142 Minn. 28 (170 N. W. 853).

Reasonableness of a law or regulation depends on conditions existing when it is put into effect, not on conditions existing when the Constitution was adopted, or when interpretations having reference to formerly existing conditions were made. Classification or regulation will not be held arbitrary or unreasonable or discriminatory unless clearly so. Idem; *City of Des Moines v. Manhattan Oil Co.*, 193 Iowa 1096; *Sundeen v. Rogers* (N. H.), 141 Atl. 142; *Liggett's Petition*, 291 Pa. St. 109 (139 Atl. 619). All regulation imposes limitation upon the full use and enjoyment of property, and in a sense takes away property rights. *Miller v. Schoene*, 276 U. S. 272 (72 L. Ed. 568). That full use and enjoyment of a plot of ground are prohibited, that the excluded use is the most profitable to which the land can be put, or that the prohibition deprives the owner of profit that would otherwise be derived from such use, or that esthetic considerations incidentally enter into the determinations does not invalidate the regulation. Idem; *Ex Parte Hadacheck*, 165 Cal. 416 (132 Pac. 584), affirmed 239 U. S. 394 (60 L. Ed. 348). A district may be zoned as residential, and industrial enterprises

excluded from it, though it is sparsely settled, and adapted for industrial uses. *State ex rel. Banner Gr. Co. v. Houghton*, 142 Minn. 28 (170 N. W. 853), referred to in *City of Des Moines v. Manhattan Oil Co.*, 193 Iowa 1096, 1111.

Standard zoning laws quite uniformly provide for a zoning commission, to hold hearings and make report to the city council. 3 McQuillin on Municipal Corporations (2d Ed.), Section 1032. On such report, the city council adopts an ordinance defining the boundaries and describing the various uses that may be made of the land in the use districts laid out, and the height of the structures in the height area districts. It would be impracticable, if not impossible, for the city council to hold hearings and make decisions in respect to the classifications and restrictions of each individual property, while manifestly a rigid adherence to invariable district lines and designated uses and classifications and height regulations therein would in many cases work unnecessarily individual injustice and hardship, and not only invalidate the zoning as to them, but, by their unreasonable or confiscatory operation as to some, imperil the constitutionality of the ordinance as to all. See 3 McQuillin on Municipal Corporations (2d Ed.), Section 1050; Baker's ''Legal Aspects of Zoning'' 76 *et seq.* In order to avoid an unreasonable and arbitrary and unconstitutional operation of the law in specific instances, and also to provide a local board to pass upon individual cases, resort is had to a zoning board of appeal, or in this state to the board of adjustment.

Section 6458, Code of 1927, provides:

''The council shall provide for the appointment of a board of adjustment and in the regulations and restrictions adopted pursuant to the authority of this chapter shall provide that the said board of adjustment may in appropriate cases and subject to appropriate conditions and safeguards make special exceptions to the terms of the ordinances in harmony with its general purpose and intent and in accordance with general or specific rules therein contained and provide that any property owner aggrieved by the action of the council in the adoption of such regulations and restrictions may petition the said board of adjustment direct to modify regulations and restrictions as applied to such property owners.''

Section 6461 authorizes appeals to the board of adjustment, and Section 6463 confers upon the board "the following powers:

"1. To hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by an administrative official in the enforcement of this chapter or of any ordinance adopted pursuant thereto.

"2. To hear and decide special exceptions to the terms of the ordinance upon which such board is required to pass under such ordinance.

"3. To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done."

Section 6464 empowers the board, in conformity with the provisions of the chapter, to make "such order, requirement, decision, or determination as ought to be made."

The board of adjustment exercises administrative and quasi judicial power. *In re Appeal of Head*, 141 Iowa 651, 665; *Harden v. City of Raleigh*, 192 N. C. 395 (135 S. E. 151) ; *Norcross v. Board of Appeal*, 255 Mass. 177 (150 N. E. 887).

The power of the board of adjustment is to vary, to make special exceptions to the application of the zoning and use regulations, not to vary, further than as the incidental effect in the specific case, boundaries or the provisions of the ordinance. *Prusik v. Board of Appeal* (Mass.), 160 N. E. 312. The variance must be reasonable, not arbitrary. It may not, under the same circumstances, be granted to one and withheld from another. The power is to be used in subordination to the general welfare, and not for the benefit of one who does not bring himself within the terms of the statute. 3 McQuillin on Municipal Corporations (2d Ed.), Sections 1031, 1050. The power may not be arbitrarily exercised, and its exercise must be confined strictly within the limitations of the statute. Idem.; *Bradley v. Board of Zoning Adjustment*, 255 Mass. 160 (150 N. E. 892). The reservation of this power of variance and adjustment and the delegation thereof to a special board are not unconstitutional. *Gorieb v. Fox*, 274 U. S. 603 (71 L. Ed. 1228) ; *Sundeen v.*

460

*Rogers* (N. H.), 141 Atl. 142; *Harden v. City of Raleigh*, 192 N. C. 395 (135 S. E. 151).

If the reasonableness of the classification established by the ordinance or of the exception or variance granted by the board of adjustment is fairly debatable, and not clearly arbitrary, the judgment of the local authorities will not be disturbed by the courts. *Zahn v. Board of Public Works*, 274 U. S. 325; 3 McQuillin on Municipal Corporations (2d Ed.), Section 1050.

But the statute does not by language or inference confer arbitrary power upon the board. On the contrary, it lays down conditions and limitations within which the board must confine itself. The power of the board is to grant such exceptions and variances in specific cases as will bring them within, not take or leave them out of, the spirit, intent, and general purpose of the ordinance of zoning.

The procedure of the board of adjustment prescribed by our statute, and the method provided for reviewing its action, are materially different from those of corresponding laws of some other states. For instance, the Massachusetts statute requires the board to make and file a record of all of its proceedings, which shall set forth the reasons for its decisions. *Prusik v. Board of Appeal* (Mass.), 160 N. E. 312; *Bradley v. Board of Zoning Adjustment*, 255 Mass. 160 (150 N. E. 892). While judicial review by writ of certiorari is there expressly authorized, it is subject to the restrictions and limitations of the general law governing such writs. These cases relied upon by both sides are not, under our statute as to the matters here referred to, in point. Section 6460, Code of 1927, requires the board of adjustment to keep minutes of its proceedings, showing the vote of each member, and to "keep records of its examinations and other official actions, all of which shall be immediately filed in the office of the board and shall be a public record." It does not specifically require that the board shall in all cases formally take, or shall act exclusively upon, evidence, or shall keep a record of the evidence before it, or of the knowledge which it gains, and upon which it acts, or shall make findings of fact, or shall make a record of the reasons for its action.

By Section 6466, any person aggrieved by any decision of the board may present to a court of record a petition "setting forth that such decision is illegal, in whole or in part, specifying

the grounds of the illegality." Thereupon the court may allow a writ of certiorari. The return of the writ "shall concisely set forth such other facts as may be pertinent and material to show the grounds of the decision appealed from and shall be verified." Sections 6467, 6468. By Section 6469:

"If upon the hearing which shall be tried *de novo* it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take evidence or appoint a referee to take such evidence as it may direct and report the same to the court with his findings of fact and conclusions of law, which shall constitute a part of the proceedings upon which the determination of the court shall be made. The court may reverse or affirm, wholly or partly, or may modify the decision brought up for review."

Of course, it is within the province of the legislature to determine the procedure and practice for judicial review, and to make use of the writ of certiorari for that purpose, and to provide for hearing *de novo* thereon. *Butin v. Civil Service Com.*, 179 Iowa 1048; 11 Corpus Juris 209, 212.

The question here presented differs from those in *Ebert v. Short*, 199 Iowa 147, and *Dickey v. Civil Service Com.*, 201 Iowa 1135, and resembles that in *Butin v. Civil Service Com.*, 179 Iowa 1048. The case differs from *Hull v. Baird*, 73 Iowa 528, where the board was required to reduce its findings to writing. The proceedings of the board are presumed to be regular. *In re Appeal of Head*, 141 Iowa 651, 665; *Oliver v. Monona County*, 117 Iowa 43. The board is presumed to have found the existence of such facts as were necessary to sustain its action. *Oliver v. Monona County*, 117 Iowa 43; *Hoyt v. Brown*, 153 Iowa 324.

The statute does not require the board of adjustment to return findings of fact, nor does it, expressly or by implication, limit review to questions of illegality or jurisdiction or other questions appearing upon the face of the record anterior to the filing of petition in certiorari. On the contrary, it expressly declares that the "hearing" (cause) shall be tried *de novo*. If all the material facts appear in the record, or are not disputed, or only questions arising upon the record are presented, the taking of evidence is not necessary. Questions likely to

arise in such cases are of such great importance that the legislature appears to have had in mind that the parties should, on the question of the legality of the board's action, be entitled to a full and complete hearing before a proper court of record, and according to accepted judicial method of ascertaining facts. The parties are not, on certiorari, bound by the finding or opinion of the local board on the facts, or by the evidence offered there, or by knowledge outside of the evidence on which the board may have acted, but, ordinarily at least, are entitled to take testimony when a determinative issue of fact is raised.

As has been shown, this petition for writ of certiorari makes allegations of fact, including statements in respect to evidence before the board and facts which do not appear in the record of the board as returned to the court. The truth of these allegations can be determined only by taking the proffered evidence. We do not hold that under the allegations plaintiffs' offers of evidence would have been sufficient to make their case. We do not understand that they intended not to offer still further evidence. Indeed, the court seems to have been of the opinion that, as matter of law,—not of discretion,—on the record returned, the defendants were entitled to have the writ quashed. We do not here have the question whether the taking of testimony in some cases of this character may be a matter for the trial court to determine, in the exercise of a legal discretion.

The proceeding by certiorari for direct review in this case is expressly authorized, and the right to trial *de novo* expressly granted. Trial *de novo* is not limited to trial *de novo* on the record made before the board or on the return. On this record, the plaintiffs were entitled, as matter of law, to introduce their evidence.

It remains to inquire what questions may be raised on certiorari. If it had been intended to give to the aggrieved party the right to remove the determination of the entire matter from the local officers and board to the court, it is reasonable to suppose that the remedy provided would have been appeal, rather than certiorari. To grant the remedy of appeal would be to raise constitutional questions upon the power of a constitutional court to deal with administrative matters. *Prima facie* the legislature uses words in the sense ordinarily given to them by the courts. The right to writ of certiorari, under well

settled practice, exists ordinarily only for the purpose of bringing up questions of jurisdiction and illegality.

. The statute reads (Section 6466):

"Any person * * * aggrieved * * * may present to a court of record a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality * * * "

It is for illegality, therefore, and only on a petition setting forth illegality, that the writ may be allowed. If possible, effect should be given to all of the provisions of the statute, and all, if possible, should be construed in harmony with each other. The trial *de novo* permitted, and the determination of whether testimony is necessary, and the admission of such testimony, or the reference permitted by Section 6469, should be confined to the questions of illegality raised by the petition for the writ. Arbitrary and unreasonable actions, or proceedings not authorized by or contrary to the terms or spirit and purpose of the statute creating and defining the powers of the board, or contrary to or unsupported by facts on which power to act depends, or within which the power must be exercised, are illegal. If one of the grounds of alleged illegality is arbitrary, unreasonable, or discriminatory action on the part of the board, and on the facts the reasonableness of the board's action is open to fair difference of opinion, there is, as to that, no illegality. The court is not, in such case, authorized to substitute its judgment for that of the local board. The plaintiffs' offer of testimony was to prove ultimate facts. The particular evidence proposed to be offered was not specified on their part, or demanded by the defendants, or required by the court to be set out. No rulings on particular offers of evidence were made or are before us for review. It is for us to correct the court merely with respect to the theory of judicial review, and, as has been done, try to point out the judicial questions involved. The statute does not provide for trial in the lower court by equitable proceedings, or for hearing in this court *de novo*. The general statute regulating the remedy by certiorari governs, except as otherwise prescribed. Certiorari must be prosecuted by ordinary proceedings, so far as applicable, and an appeal lies as in ordinary actions. Code of 1927, Sections 12465, 12466. An appeal to this court does not bring

the cause here for trial *de novo*. *Remey v. Board of Equalization*, 80 Iowa 470.

Appellants contend that the action of the board is in violation of the Fourteenth Amendment, Constitution of the United States, and of Section 6, Article 1, and Section 30, Article 3, of the state Constitution, in that it denies the equal protection of the laws, denies to the zoning law uniform operation, makes it, as to intervener, a special or local law, grants to intervener a special privilege or immunity. Appellees urge that, unless the board had allowed the variance, the zoning ordinance would, as to the property of intervener, have operated as an unconstitutional deprivation of property without due process of law, a denial of the equal protection of the laws, and an impairment of contract obligations.

These contentions should be considered only when the facts are ascertained. Other questions are argued, which it would likewise be premature to consider at this time.

For error in refusing to receive evidence and in quashing the writ without trial *de novo*, the judgment is—*Reversed*.

STEVENS, C. J., and EVANS, DE GRAFF, ALBERT, KINDIG, and WAGNER, JJ., concur.