The INCORPORATED TOWN OF CARTER LAKE, Iowa, Appellant,

v.

ANDERSON EXCAVATING AND WRECKING CO., a Nebraska Corporation, Appellee.

No. 2–57023.

Supreme Court of Iowa.

May 19, 1976.

John P. Churchman, Council Bluffs, for appellant.

James A. Pratt, Council Bluffs, for appellee.

Heard by MOORE, C. J., and LeGRAND, UHLENHOPP, REYNOLDSON and McCORMICK, JJ.

McCORMICK, Justice.

This appeal involves a dispute between a municipality and the operator of a private landfill. Plaintiff, The Incorporated Town of Carter Lake, Iowa, brought this action in equity to enjoin defendant Anderson Excavating and Wrecking Co., a Nebraska corporation, from operating a landfill in the town on grounds of violation of a town ordinance and maintenance of a public nuisance. The trial court denied injunctive relief. We affirm in part and reverse in part.

The appeal presents four questions: (1) is Ordinance 170 of Carter Lake a valid exercise of the municipal police power? (2) do the permit requirements of the ordinance apply to defendant? (3) does the evidence show violations of the ordinance by defendant supporting injunctive relief? (4) does the evidence show the landfill is a common-law public nuisance?

We recite the facts we find established from our *de novo* review of the record.

About half the area occupied by Carter Lake is Missouri River bottomland. Much of this land is low and swampy. Municipal reclamation efforts over the years have included encouragement of private landfill operations. The land involved here consists of about 11 acres of low, swampy, and sandy land located within the corporate limits of Carter Lake at Fifth and Locust Streets. A former town councilman described the land as "an old swamp, an old blow sand hole." He said that before its use as a landfill it was "full of weeds and debris of every kind" and had water on it every year. It was once part of a dairy farm and was later an automobile junkyard. It is owned by Evalyn Pavlas, a resident of Nebraska.

Defendant is in the business of demolishing buildings in the Omaha-Council Bluffs area. Virgil D. Anderson, president of the corporation, desired a site on which to dispose of demolition rubble. In April 1968 he negotiated a ten-year lease of the Pavlas land for the corporation for the stated purpose of "dumping materials of all types and kinds on the site". The lease was conditioned on municipal approval of defendant's planned use of the land as a landfill for the term of the lease. A term rental of $30,000 was payable at the rate of $250 per month over the ten-year period. The lease authorized defendant to remove sand and gravel from the premises but obligated it to fill and grade all excavations before return of the property.

Uncontroverted evidence shows Anderson presented the lease to the town council of Carter Lake for approval of the ten-year operation by defendant of a landfill on the premises as provided in the lease. The council approved the landfill operation subject to an addendum to be added to the lease restricting the kind of materials which could be dumped on the site. The addendum, entered in June 1968, limited the dumping to "materials such as those from wrecked buildings, including lumber, material products, rock and stone and specifically excluding garbage, waste, and any other odorous and/or offensive materials." Pursuant to directions of the council the addendum also stipulated, "Said permitted materials shall be buried and not burned." The addendum characterized Anderson's appearance before the Carter Lake council as an application for a "dumping permit".

Defendant began using the premises for the purpose contemplated.

In October 1970, Carter Lake enacted Ordinance 170, entitled "An Ordinance Providing for the Licensing and Regulation of Private Landfill Operators and Disposal Sites: Providing Penalties for Violation Thereof." By its terms the ordinance purported to regulate private landfill operations like defendant's.

The ordinance contains the following provisions which are material here:

SECTION 1. For the purpose of this Ordinance the following definitions shall apply:

\* \* \* \* \* \*

1.3 "Sanitary Landfill" shall mean a controlled method of disposing of refuse on land without creating air, land or water pollution or nuisances or hazards to public health or safety, by utilizing the principles of engineering to confine the refuse to the smallest practical volume, and to cover it with a layer of earth at the conclusion of each day's operation, or at more frequent intervals as may be necessary.

1.4 "Refuse" shall mean unwanted or discarded material resulting from commercial, industrial and agricultural operations and from normal community activities. Waste refuse includes in part the following: garbage; rubbish; ashes and other residue after burning; street refuse; dead animals; animal waste; abandoned vehicles; agricultural, commercial and industrial waste; construction and demolition waste and sewage treatment residue.

SECTION 2. All sanitary landfills within the jurisdiction of the City shall be operated in a sanitary, safe and nuisance free manner, and shall comply with all local, state and federal laws and regulations. In addition to other laws or regulations which may be required the following standards shall apply:

\* \* \* \* \* \*

2.3 On-Site Access Roads. Access roads shall be provided on the premises of the site which are readily negotiable by heavy and light vehicles during wet weather.

\* \* \* \* \* \*

2.10 Spreading and Compacting. Refuse shall be spread and compacted in shallow layers, not exceeding a depth of two feet of compacted material. Additional layers shall be placed one upon another until the depth of fill has reached a predetermined height for that particular daily lift.

2.11 Daily and Intermediate Cover. A uniform compacted layer of at least 6" of suitable cover material shall be placed on all exposed refuse by the end of each working day. Where a completed lift is to be left for more than 6 months before the application of another lift, the depth of cover requirement shall be increased to a minimum of 12" compacted thickness.

2.12 Final Cover. A layer of suitable cover material compacted to a minimum depth of three feet shall be placed over the entire surface of each portion of the final lift not later than 3 months following the placement of final lift. This final cover shall be fine graded to the grades established for the ultimate use of the site. The graded final cover shall be planted to grass or other suitable ground cover at the earliest reasonable time and watered and maintained to establish an adequate ground cover.

\* \* \* \* \* \*

2.14 Ground Water. Refuse shall not be placed in locations or at elevations where contact with ground water is likely and such contact would result in pollution of ground water supplies or other pollution or nuisance.

\* \* \* \* \* \*

SECTION 3. \* \* \*

SECTION 4. Any person may establish and operate a private landfill for the disposal of "Construction Demolition Waste" originating from the operator's own demolition work, provided he shall have first applied for and received a permit from the City designating his site a

"Licensed Private Landfill," and may do so as long as the permit shall remain in force and the site is operated in accordance with the provisions of this Ordinance.

\*　　\*　　.\*　　\*　　\*　　\*

In lieu of the daily and Intermediate Cover requirements as written, the operator shall be required to comply with this standard only for that part of the material which is combustible or which is subject to being scattered by the wind causing wind blown litter.

If any private landfill operation is found to be conducted in a way detrimental to the health and welfare of the public, or contrary to provisions of this ordinance, the Mayor shall notify the operator in writing of the objectionable conditions and give him a reasonable time to correct said condition. After proper notice, the City is authorized to enter upon the premises and use any of the City's forces and equipment, or those of the landfill operator, or hire forces and equipment, to correct the objectionable conditions. The same shall be considered of benefit to the Owner of the land and the cost of such corrective action shall be chargeable to the Owner, and if not paid, shall constitute a lien upon the premises and shall be collected in the same manner as taxes as provided by law.

SECTION 5. Any existing private or sanitary landfill operation now in existence shall have sixty (60) days after the enactment of this ordinance to comply with the provisions of this ordinance.

SECTION 6.　\*　\*　\*

SECTION 7.　\*　\*　\*

SECTION 8. Any person violating any of the provisions of this ordinance shall be deemed guilty of a misdemeanor and, upon conviction, be subject to a fine of not more than $100.00 or to imprisonment for not more than 30 days.

·\*　　\*　　\*　　\*　　\*　　\*

Defendant did not immediately seek a permit under the new ordinance.

In December 1970 a fire broke out in defendant's landfill and could not be extinguished for seven or eight days. While the fire was burning, plaintiff brought an equitable action against defendant seeking to restrain defendant from operating the landfill "until such fire has been extinguished and until such landfill meets the requirements of town ordinances covering landfills".

That case was tried in March 1971 and decided a month later. The court found the fire was the result of arson and defendant's alleged failure to cover combustible materials as required by the ordinance was not its cause. The court also found defendant changed its method of operation subsequent to the fire "in that dumping is now done in pits where there are no exposed edges and \* \* \* the top is covered with wet sand." The court held the operation of the landfill at that time conformed to the ordinance and denied the injunction. No appeal was taken from the court's decree.

In May 1971 defendant received a permit under Ordinance 170 to operate the landfill on the premises for a period of one year. When the permit expired May 6, 1972, defendant did not seek renewal.

The present action was commenced in October 1972. Plaintiff alleged defendant was operating the landfill in violation of the terms of the ordinance and without a permit. Plaintiff asked for an injunction forbidding defendant from moving additional material onto the site until it was brought into compliance with the ordinance and a permit was obtained. Later plaintiff amended the petition, adding a division seeking the same relief on the ground the landfill operation was a nuisance.

In answering the petition, defendant denied the allegations of ordinance violation and nuisance. In addition, defendant alleged the ordinance did not apply to its landfill, the permit provisions of the ordinance were inapplicable because of the council's approval of the lease, and an injunction would deprive defendant of its property without just compensation and without due process of law in violation of

Article I §§ 9 and 18 of the Iowa Constitution and the Fourteenth Amendment of the United States Constitution.

The case was tried in April and June 1973. The trial court viewed the premises with counsel in August 1973. The court's ruling was filed in September 1973. The court found Carter Lake failed to prove the reasonableness of Ordinance 170, its permit requirements had no application to defendant, the evidence was insufficient to show defendant violated the terms of the ordinance, and the evidence was insufficient to show the landfill was a nuisance. Injunctive relief was denied, and plaintiff's petition was dismissed. A subsequent motion by plaintiff for new trial and petition for modification of the decree were overruled in December 1973, and this appeal followed.

I. *Validity of the ordinance.* The trial court did not expressly hold Ordinance 170 to be invalid. It did find plaintiff failed to establish the reasonableness of the landfill regulations in the ordinance. Plaintiff contends the court's ruling had the effect of placing the burden of proof on the town to establish the validity of the ordinance rather than placing the burden on defendant to prove its invalidity.

■ This contention has merit. An ordinance is presumed to be reasonable and valid, and the burden is upon one who attacks it to show it is not. Evidence of invalidity must be clear. *Business Ventures, Inc. v. Iowa City,* 234 N.W.2d 376, 381 (Iowa 1975); *Cedar Rapids, etc. v. Cedar Rapids Commun. Sch.,* 222 N.W.2d 391, 399 (Iowa 1974); *Cole v. City of Osceola,* 179 N.W.2d 524, 528 (Iowa 1970); *Jurgens v. Davenport, R. I. & N. W. Ry. Co.,* 249 Iowa 711, 716, 88 N.W.2d 797, 801 (1958).

■ The reasonableness of an ordinance, apart from other issues bearing on its validity, is determined in the light of its purposes and effects. If it tends to accomplish a proper municipal object in a way which can find justification in the minds of reasonable persons, it is reasonable. It is not unreasonable simply because a better means of accomplishing the same object

might be conceived, nor is it unreasonable simply because it restricts the full use and enjoyment of property. *Anderson v. Jester,* 206 Iowa 452, 221 N.W. 354 (1928); *Huston v. City of Des Moines,* 176 Iowa 455, 156 N.W. 883 (1916); 5 McQuillin, Municipal Corporations, §§ 18.01–18.08 (1969); 56 Am. Jur.2d Municipal Corporations § 388.

■ We have previously recognized the right of a municipality to provide for and regulate the disposal of refuse and garbage. *Harvey v. Prall,* 250 Iowa 1111, 97 N.W.2d 306 (1959). This includes the right to regulate sanitary landfills. *Schultz v. Board of Adjust. of Pottawattamie Co.,* 258 Iowa 804, 139 N.W.2d 448 (1966). This right flows from municipal police power. *Town of Grundy Center v. Marion,* 231 Iowa 425, 1 N.W.2d 677 (1942); 56 Am.Jur.2d Municipal Corporations § 455 at 506 ("It is but the exercise of an authority properly appertaining to a municipality in the interest of the public and to promote and preserve the welfare and convenience of all the people.").

Although not involved here, municipalities now have a duty to establish and operate sanitary disposal projects for their residents. § 455 B. 76, The Code; *Vogelaar v. Polk County Zoning Bd. of Adjustment,* 188 N.W.2d 860, 863 (Iowa 1971). Plans for sanitary landfills to meet this duty must conform to state environmental quality standards. Iowa Administrative Code, Environmental Quality Department (400), chapter 27. Those standards are similar to the standards in Ordinance 170.

■ The purpose of municipal regulation of landfills is to prevent them from becoming public nuisances. Refuse disposal has that potential. *Harvey v. Prall,* supra. Although a refuse disposal operation is not a nuisance per se, it may be a nuisance in fact as a result of the manner in which it is operated. *Horn v. Community Refuse Disposal, Inc.,* 186 Neb. 43, 180 N.W.2d 691 (1970); *Wood v. Town of Wilton,* 156 Conn. 304, 310, 240 A.2d 904, 907 (1968).

Municipal regulations are reasonably necessary in order to prevent that potential from being realized. "Obviously, the com-

pacting and covering of refuse is calculated to reduce if not eliminate filth, odors, rodent infestation and air pollution. The sanitary landfill operation is a sensible solution to the pressing social problem of refuse disposal, and, when properly operated, it represents a vast improvement over the old-fashioned dump." *Rocchi v. Zoning Bd. of App. of Town of Glastonbury,* 157 Conn. 106, 109, 248 A.2d 922, 924 (1968).

Testimony was received in this case from an inspector for the state department of environmental quality and from a county health officer that regulations like those in Ordinance 170 are calculated to reduce the hazards of fire, air and water pollution, insect and rodent infestation, and litter. No specific allegation or proof was tendered by defendant to show the regulations in the ordinance are unreasonable or the ordinance is invalid.

█ The trial court erred in placing the burden to demonstrate the reasonableness of the regulations on plaintiff and erred in finding the reasonableness of the regulations did not appear. We hold defendant failed to establish the invalidity of any of the regulations in the ordinance.

█ II. *The permit requirement.* Ordinance 170 purports to require defendant to obtain a permit as a condition to continued operation of its landfill. The trial court held plaintiff could not enforce that provision against defendant because of the council's action in 1968 granting defendant the right to operate the landfill for the ten-year term of its lease. Plaintiff does not deny such permission was given. Its mayor, a present council member and a former council member supported Anderson's testimony on that point.

The court's ruling was based on defendant's due process defense. Defendant did not assert a defense based on impairment of its contract rights under Article 1, § 10 of the United States Constitution. See 6 McQuillin, Municipal Corporations, § 24.20 (1969).

The uncontroverted evidence shows defendant leased the land in reliance on permission from Carter Lake to operate a landfill on the premises for the duration of the lease. By obligating itself to the lease in reliance upon that right, defendant acquired a vested property right which could not be arbitrarily interfered with or taken away without just compensation. *Stoner* ° *McCray System v. City of Des Moines,* 247 Iowa 1313, 78 N.W.2d 843 (1956). Requiring defendant to obtain a permit to do what plaintiff had already given it a right to do is inconsistent with this principle. Reasonable regulation of the exercise of that right is a separate question. *Anderson v. Jester, supra.*

The trial court correctly held defendant could not be required to obtain a permit during the ten-year period of the lease.

III. *Violations of the ordinance.* The trial court held plaintiff failed to prove defendant was guilty of violating the ordinance. From our *de novo* review of the record, we are unable to agree.

Evidence of ordinance violations was given by three members of plaintiff's council, one of whom was assistant fire chief in the town, and by a town police officer. The council members had observed the landfill operation closely for many months on a regular basis. They had complaints about it and on several occasions discussed its operation with defendant's president. Their testimony was supported by a number of photographs taken in February, April and May 1973.

Plaintiff's evidence showed defendant violated §§ 2.3, 2.10, 2.11, 2.12, 2.14, and 4 of the ordinance.

The site did not have on-site access roads readily negotiable by vehicles during wet weather as required by § 2.3. Although close to 90 percent of the rubble was combustible, it was not spread and compacted in shallow layers less than two feet in depth on a daily basis as required by § 2.10. The depth ranged from five to fifteen feet, and the material was not compacted and divided into cells as contemplated by the ordinance to reduce the hazard of fire. The daily or intermediate cover requirement of §§ 2.11

and 4 was met only on a sporadic basis, mostly after commencement of the lawsuit. The final cover requirement of § 2.12 had not been met in any part of the site. Rubble was dumped directly into accumulations of ground water in violation of § 2.14. The police officer testified he observed rats coming from the site at night on many occasions.

Defendant's response to this evidence took three paths. One was to deny generally that the ordinance was being violated. A second was to point out the landfill operation was an improvement over prior uses of the land and was helping reclaim it. The third, which occupied most of defendant's evidence, was to show other land in Carter Lake, including a nearby tract owned by the town, was also being used as a dumping ground in circumstances showing violations of the standards in ordinance 170. The suggestion was made, although denied by plaintiff, that plaintiff was not seeking to remedy these other conditions.

Regarding the first line of defense, Anderson testified the debris hauled into the landfill was covered on a daily basis. We do not find that testimony credible in view of the strength of plaintiff's evidence to the contrary. Neither Anderson nor any other defense witness offered specific testimony on the matter of absence of on-site access roads, failure to meet the spreading and compacting requirements of the ordinance, and dumping into ground water.

■ The second and third lines of defense had no bearing on the issue of defendant's violations of the ordinance. Showing conditions were previously worse and are now no worse nor as bad as conditions on other property is no defense to allegations that existing conditions and activities on the property involved violate regulations imposed in a valid ordinance.

We believe plaintiff proved by a preponderance of evidence that defendant's operation of the landfill regularly violated the regulations in ordinance 170 in the principal respects alleged. The trial court erred in finding otherwise.

■ Since we find violations were proven, we must decide the appropriateness of injunctive relief. A violation of the ordinance is a misdemeanor. In most situations such a penal provision is a sufficient remedy for violation of an ordinance. However, when the ordinance is regulatory and its principal purpose is to promote the public interest and welfare, the penal provision is merely incidental. The criminal provision neither gives nor ousts equitable jurisdiction. When an injunction is necessary for the protection of the public interest and welfare, the criminality of the acts complained of does not bar the remedy by injunction. *State ex rel. Turner v. United-Buckingham F. L., Inc.,* 211 N.W.2d 288, 290 (Iowa 1973); *Sound Storm Ent., Inc. v. Keefe, In & For Fayette Cty.,* 209 N.W.2d 560, 566 (Iowa 1973); *Harvey v. Prall,* 250 Iowa 1111, 1118, 97 N.W.2d 306, 310–311 (1959); *Town of Grundy Center v. Marion,* 231 Iowa 425, 431–432, 1 N.W.2d 677, 680 (1942). A court of equity will enjoin the commission of acts which threaten injury to public rights or endanger public health even though such acts are also denounced as crimes.

Ordinance 170 is a regulatory ordinance whose purpose is to prevent a private landfill from becoming a nuisance. The penal provision is incidental to this purpose. We find defendant's violations of the ordinance threaten injury to the public rights sought to be protected. On that basis, we hold defendant's continued violations of the ordinance should be enjoined.

We do not believe it is necessary to enjoin defendant's use of the premises as a landfill. See *Mahlstadt v. City of Indianola,* 251 Iowa 222, 100 N.W.2d 189 (1959). We will remand the case in order to permit the trial court to frame an injunction requiring defendant to take such measures as the trial court in its discretion finds reasonable to bring the present condition of the landfill into compliance with the ordinance and restraining defendant for the future from practices which have been found herein to violate the ordinance.

IV. *The nuisance allegation.* The trial court held the evidence was insufficient to establish the existence of a common-law nuisance. We agree with this holding. The purpose of ordinance 170 is to prevent a nuisance. Defendant's violations of the ordinance frustrated this purpose, but we do not believe the evidence was sufficient to show the existence of a nuisance in fact.

The trial court did not err in holding plaintiff failed to prove the existence of a nuisance.

Because of our holdings in Divisions I and III, this case must be reversed in part and remanded for the trial court to fashion and enter an injunction containing the provisions specified in Division III.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.