# IN THE COURT OF APPEALS OF IOWA

No. 18-1109
Filed September 25, 2019

**S & A 786, LLC d/b/a DOWNTOWN PANTRY,**
       Plaintiff-Appellee,

**vs.**

**CITY OF DES MOINES ZONING BOARD OF ADJUSTMENT,**
       Defendant-Appellant.
_____

       Appeal from the Iowa District Court for Polk County, Karen A. Romano,

Judge.


       The Zoning Board of Adjustment of the City of Des Moines appeals after the

district court sustained the writ of certiorari by which S & A 786, LLC challenged

the legality of the revocation of its conditional use permit.  **AFFIRMED.**



       Luke DeSmet, Assistant City Attorney, Des Moines, for appellant.

       David N. Fautsch of The Weinhardt Law Firm and David W. Nelmark of

Gislason & Hunter LLP, Des Moines (until withdrawal), for appellee.



       Heard by Potterfield, P.J., and Bower and Greer, JJ.

**BOWER, Judge.**

The Zoning Board of Adjustment of the City of Des Moines (Board) appeals after the district court sustained the writ of certiorari by which S & A 786, LLC, doing business as Downtown Pantry (Pantry), challenged the legality of the Board's revocation of its conditional use permit (CUP). Because we agree with the district court there is not substantial evidence to support the Board's finding the Pantry's operation had created a nuisance and the revocation of the CUP was arbitrary and capricious, we affirm.

**I. Background Facts and Proceedings.**

The Pantry operates a business selling food and alcoholic beverages under a CUP originally issued in 2010. After the Pantry moved to its present location at the intersection of Sixth Avenue and Walnut Street, Des Moines, the Board issued a new CUP on November 26, 2013:

> DECISION AND ORDER
> WHEREFORE, IT IS ORDERED that the appeal for a Conditional Use Permit for a business selling wine, liquor, or beer, to allow use of the property for a "limited food/retail sales establishment", where no more than 40% of revenue would be allowed to be derived from the sale of liquor, wine, beer, and tobacco products, is granted subject to the following conditions:
> (1) Any liquor or wine available for sale shall be kept within a maximum 12-foot long–cabinet located behind the counter where it is accessible only to store employees,
> (2) Any beer available for sale shall be kept within a maximum 4-foot wide cooler or display.
> Furthermore, as a limited food sales establishment, no more than 40% of revenue would be allowed to be derived from the sale of wine and beer and any sale of liquor, wine, and/or beer shall be accordance with a liquor license obtained through the Office of the City Clerk as approved by the City Council. The Conditional Use Permit shall be subject to amendment or revocation if the Zoning Enforcement Officer determines that the operation of the business becomes a nuisance or exhibits a pattern of violating the conditions set forth in the Conditional Use Permit.

. . . .

(5) The conditional use permit is subject to amendment or revocation if the operation of the business becomes a nuisance or exhibits a pattern of violating the conditions set forth in the conditional use permit.

(6) If the zoning enforcement officer determines at any time that the operation of such a business exhibits a pattern of violating the conditions set forth in the conditional use permit, the zoning enforcement officer may apply to the board to reconsider the issuance of the conditional use permit for such business. A copy of such application and notice of the hearing before the board on such application shall be provided to the owner of such business at least 30 days in advance and shall also be provided to all owners of record of property within 250 feet of the subject property. If the board finds that the operation of such business exhibits a pattern of violating the conditions set forth in the conditional use permit, the board shall have the authority to amend or revoke the conditional use permit.

The Pantry was compliant with its CUP and, on May 4, 2016, the Board unanimously approved the Pantry's request to amend the CUP, which allowed an expanded display area for alcoholic liquor and wine.[1] The amended CUP included the following conditions:

(6) The business shall institute a strict no loitering policy, conspicuously post one or more "No Loitering" signs, and cooperate with police in addressing any loitering on the premises.

(7) Litter and trash receptacles shall be located at convenient locations inside and outside the premises, and operators of the business shall remove all trash and debris from the premises and adjoining public areas on a daily basis.

(8) Any renovation on the site shall be in compliance with all applicable building and fire codes, with issuance of all necessary permits by the Permit and Development Center.

(9) If the Zoning Enforcement Officer determines at any time that the operation of such a business becomes a nuisance, exhibits a pattern of violating the conditions set forth in the Conditional Use

---

[1] The Board's decision allowed continued use of the property for a "limited food/retail sales establishment" that sells liquor, wine, and beer while expanding the allowed display area of alcoholic liquor and wine from a 12-foot long cabinet behind the counter to a 16-foot long cabinet behind the counter, and while expanding the allowed display area of beer from a 4-foot wide cooler or display to an 8-foot wide cooler or display and a 6-foot wide cooler or display [subject to nine conditions].

Permit, or violates the requirements of City Code Section 134-954(c), the Zoning Enforcement Officer may apply to the Board to reconsider the issuance of the Conditional Use Permit.

The Pantry has never been cited for a violation of the conditions of its CUP or amended CUP.

On October 16, 2017, Neighborhood Inspection Zoning Administrator SuAnn Donovan sent a letter to the Pantry's owners, Shahid and Aileen Mahmood, stating she was seeking a reconsideration of the CUP because the business had become a nuisance:

> Reports from the City of Des Moines Police Department, security guards with the Financial Center and area residents [cite] loitering, alcohol sales to intoxicated persons and criminal behavior and patrons causing problems for the people in the area and residents in the Fleming Building which create an attractive nuisance in the neighborhood.

Attached to the letter was Donovan's application for rehearing, which was to be heard at the November 15 Board meeting. That notice indicated the application alleged "the conduct of the business has become a nuisance to the surrounding neighborhood."

In response to the Pantry's owners' requests for a meeting with Donovan, Donavan wrote to their attorney:

> I am all about reaching a compromise and in most cases we can work toward a mutually beneficial outcome. In this case the sale [of] alcohol in this location is the cause of the resulting nuisance behavior in the area. I see no conditions that would allow the alcohol sale and eliminate the resulting nuisance. Therefore, we have no room for negotiation and a meeting would be fruitless.

At the Board meeting, Donovan presented several exhibits, including a letter from the Des Moines Downtown Chamber, which Donavan summarized as objecting to the "clientele" of the Pantry, and neighboring businesses objecting to

the concentration of persons from the nearby homeless shelter sitting on benches at the corner. She offered a list of police reports "to the general vicinity" where she asserted "we have people hanging around that area panhandling, harassing people, passing out. All sorts of bad behavior in that area."

The attorney for the Pantry addressed the Board and argued the Pantry was being unfairly and unreasonably blamed for the criminal activity taking place in a problematic area of the city:

> So today I would ask you to consider what role the Downtown Pantry is playing in the criminal activity that's taking place in this part of Downtown.
>     Because if you're familiar with downtown Des Moines, Sixth and Walnut between Third and Court and Eighth and Walnut, which is what the maps that the police have provided us with this problematic area, that, I would consider, and I think most would consider, to be the central hub of downtown Des Moines. People coming and going. The DART bus station, the new Hy-Vee, large office buildings. So where more people are, where there's more population, there's gonna be more crime. That's just a fact.

The attorney addressed Donovan's various exhibits and summarized his clients' objection noting, "And it's clear that there's a problem with crime in the area. There's no debating that, there's no denying it. But what's not clear is how all of these offenses, you know, go directly back to the Downtown Pantry." Counsel offered ten letters from supporters of the Pantry.

Individuals were then allowed to make short statements to the Board in support of amending or revoking the CUP.[2] Luz Landucci stated she worked at the Financial Center and complained about seeing people "coming out of the food pantry panhandling" in the area and sitting on the benches. Landucci presented

---

[2] The attorney for the Board calls this "testimony," but we must note these individuals were not under oath.

pictures of individuals laying on the street or sitting along the sides of buildings in the area. Landucci also stated she "observed this lady [showing picture] coming out of the [Pantry] . . . and she got a bottle of alcohol there, she shared it with another group of people."

Melissa Duffy, who worked with a realty company and was the co-chair for the Skywalk Security Committee, spoke in support of revoking the CUP stated, "[I]t's not as if this business is selling craft beer and wine. I mean, their—their clientele and their entire business model is based off of airplane bottles and single beer cans." When asked by a board member if the speaker was able to track the alcohol back to the Pantry, Duffy responded:

> Can we track it? No. But is there any other place to do that? No. I mean, you can tell where they're coming from. I mean, we all—I mean, there's a number of us in this room that have buildings that surround each other. It is the only place that would sell that kind of thing to that kind of clientele, frankly. There's—there's nowhere else.

Duffy asserted there was a "traffic pattern" from the homeless shelter to the area of the Pantry but acknowledged she was making "a bit of an assumption."

Police Officer Ned Chiodo spoke, providing anecdotes about arresting two persons: one "out on the sidewalk across Sixth and Mulberry" who "admitted he got his alcohol from the Pantry"; another person who was stumbling and "I didn't catch him before he got into the Pantry" and "was just standing in the door."

Sergeant Garth House stated the Pantry "is the place where our homeless population goes to get their alcohol." While acknowledging that Hy-Vee also sells "airplane bottles" of alcohol, "their staff is probably better trained to recognize

people that are impaired, don't sell to those impaired people, as well as the off-duty officers that work there."

Persons supporting the Pantry's owners also spoke. One person expressed concern for targeting the homeless and the lack of resources for the homeless. The speaker stated he had seen people steal bottles of alcoholic beverages from Hy-Vee and drink in the alley, "[s]o I don't think it's just the Downtown Pantry." Another person stated he knew the Pantry sold more than just alcohol and had won a contest for their sale of groceries. Another speaker stated he had seen the owner of the Pantry try to stop the panhandling outside and turn down people who are intoxicated from purchasing. He also stated he learned the Pantry's owner had organized a food drive with another business and provided food for the homeless.

Donavan spoke again:

> One of the other things that the ordinance says is that they shall institute a no loitering policy, conspicuously post one or more no loitering signs, and cooperate with police when addressing loitering on the premise.
> These are the nicest people. That's fine. They're nice people. I think if you take the alcohol out of that neighborhood you're gonna have the nuisance go away. The people are drawn to the alcohol and then they create problems in the neighborhood.
> . . . .
> . . . I don't think that taking the liquor signs out of the window and doing single serve is going to change the business model. People are going there to get alcohol. They're panhandling to get alcohol. I just don't see where that's gonna happen.
> . . . .
> I think the—I just don't think that you can change any of those conditions that's gonna make it palatable and make it work. I think you just need to revoke it and bring peace and sanity back to that neighborhood.

Shahid Mahmood informed the Board the most recent audit of the Pantry business showed twenty percent of the Pantry's sales was from alcoholic beverages. He stated he wished the city and the police department had spoken with him and "I would love to take the single serve away." He closed with this statement: "We've been in the community for almost seven years. We never have any problem until we just came into this meeting. I wish somebody would tell me something and we can figure something out and get to the bottom of the problem."

Board members expressed some disappointment that the Pantry's owners had not ceased selling single servings of alcoholic beverage on their own and with the lack of communication by the city with the Pantry's owners. At the conclusion of the meeting, however, the Board voted unanimously to revoke the Pantry's CUP. The Board's written ruling was issued on November 15, 2017:

> During the public hearing, multiple residents, business leaders, private security personnel, and officers from the Des Moines Police Department provided verbal testimony, photographic evidence, and detailed police reports documenting multiple occurrences of nuisance behavior both inside and in the immediate vicinity of the business. The evidence also showed that on multiple occasions, inebriated individuals were able to purchase alcohol at the business and then commit crimes or disturbances in the immediate vicinity.
> The Board finds that the evidence as presented adequately demonstrates that the business has become a nuisance and that the criteria necessary for retaining the [CUP] is not being satisfied. The Board finds that the location and operation of the particular use does not adequately safeguard the health, safety and general welfare of persons residing in the adjoining or surrounding residential area. . . . Therefore, the Board finds that the [CUP] shall be revoked, effective immediately.

The Pantry then filed a petition for writ of certiorari in district court. *See* Iowa Code § 414.15 (2017). In accordance with its trial de novo,[3] the court determined additional testimony was necessary for a proper disposition and held an evidentiary hearing. *See id.* § 414.18.

Aileen and Shahid Mahmood both testified. Aileen testified they had not changed business practices after the Board amended the conditional use permit in 2016, they had received no criminal citations, and that they do not sell to intoxicated persons. She also testified Hy-Vee sells the same products at lower prices. Shahid testified he was always willing to cooperate with police. He critiqued the statements of Landucci, noting the Financial Center where she works has no direct line of sight to the Pantry. Shahid also testified his business had not received a citation for selling to an intoxicated person. He opined the installation of benches on Walnut Street and the opening of the nearby bus station caused the increase in problems near the Pantry.

After the hearing, the district court sustained the writ, concluding the Board's finding that the Pantry's operation had created a nuisance was not supported by substantial evidence. The court observed:

> Downtown Pantry has never received a citation from the city for selling to an intoxicated person—Downtown Pantry has never received a citation for any wrongdoing. Downtown Pantry has never

---

[3] In *Martin Marietta Materials, Inc. v. Dallas County*, 675 N.W.2d 544, 551 (Iowa 2004), the supreme court explained:

> The term "de novo" as used in . . . section [414.18] does not bear its equitable connotation. It authorizes the taking of additional testimony, but only for the submission and consideration of those questions of illegality raised by the statutory petition for writ of certiorari. Upon the hearing to determine such questions the trial court . . . "may reverse or affirm, wholly or partly, or may modify the decision brought up for review."

(Citations omitted.)

been the subject of a nuisance lawsuit. Downtown Pantry has never received a notice to abate a nuisance. Prior to the notice of the hearing to reconsider its CUP, Downtown Pantry had never been requested by the Des Moines Police Department to change its business practices, nor had it been approached by any chamber of commerce or neighborhood association. Downtown Pantry has never had an issue with its liquor license . . . .[4] The Zoning Board had no issues with Downtown Pantry at the hearing held to expand Downtown Pantry's CUP on April 27, 2016.

The court found the testimony of Shahid Mahmood credible. He testified that he had cooperated with the Des Moines Police Department by allowing them to view and burn surveillance footage from Downtown Pantry. Through his attorney, he had tried, unsuccessfully, to coordinate a meeting with the City to address any issues with Downtown Pantry's business practices. Mr. Mahmood testified that he was fully willing to cooperate with the City and the Des Moines Police Department to address any concerns either entity had. He was not given any opportunity to do so.

The district court also determined the revocation of the Pantry's CUP was

arbitrary and unreasonable:

This court finds it is unreasonable, arbitrary, and capricious to revoke Downtown Pantry's CUP permitting it to sell liquor, beer, and wine. An action is arbitrary and unreasonable when it is "not authorized by the statute authorizing the board's power or that is contrary to or unsupported by the required facts." *Bontrager Auto Serv. Inc.* [*v. Iowa City Bd. of Adjustment*], 748 N.W.2d [483,] 492 [(Iowa 2008)] (citing *Anderson v. Jester*, 221 N.W. 354, 359 (Iowa 1928)). Revoking Downtown Pantry's CUP to sell alcohol will not eliminate alcohol sales in the immediate area nor will it likely eliminate the nuisance. The Board acknowledged as much, stating "[a]ll you're doing is pushing poor people and homeless people to some other location, probably downtown. You're not solving the problem." Hy-Vee sells a much wider variety of the same types of alcoholic products a few blocks away. There was no evidence that Hy-Vee refuses to sell alcohol to people who may subsequently consume alcohol publically, loiter downtown in a nearby area furnished with multiple public benches, or engage in any other illegal acts in the area.

---

[4] The district court noted the license was renewed in March 2018. The City objects, noting the renewal of the license occurred after the Board's actions and should not be considered. We agree.

The court concluded, the "Board's decision to revoke Downtown Pantry's CUP was not supported by required facts, namely that the Downtown Pantry's operation caused a nuisance, and it was unreasonable, arbitrary and capricious." The court therefore reversed the Board's action revoking Downtown Pantry's CUP to sell beer, wine, and liquor. The Board appeals, asserting its decision to revoke the CUP is supported by substantial evidence and was not unreasonable, arbitrary, or capricious.

## II. Standard of Review.

> Our case law has established the following standard of review for the district court under section 414.18:
>
>> [I]n a certiorari proceeding in a zoning case the district court finds the facts anew on the record made in the certiorari proceeding. That record will include the return to the writ and any additional evidence which may have been offered by the parties. *However, the district court is not free to decide the case anew. Illegality of the challenged board action is established by reason of the court's findings of fact if they do not provide substantial support for the board decision.* If the district court's findings of fact leave the reasonableness of the board's decision open to a fair difference of opinion, the court may not substitute its decision for that of the board.

*Baker v. Bd. of Adjustment of Johnston*, 671 N.W.2d 405, 412–13 (Iowa 2003) (citation omitted).

The *Anderson* court addressed what use the district court may make of the factual record made in the certiorari proceeding:

> The trial de novo permitted the determination of whether testimony is necessary, and the admission of such testimony, or the reference permitted by section [414.18], should be confined to the questions of illegality raised by the petition for the writ. Arbitrary and unreasonable action or proceedings, not authorized by, or contrary to, the terms or spirit and purpose of the statute creating and defining the powers of the board, or contrary to, or unsupported by, facts on

which power to act depends, or within which the power must be exercised, are illegal. If one of the grounds of alleged illegality is arbitrary, unreasonable or discriminatory action on the part of the board, and on the facts the reasonableness of the board's action is open to fair difference of opinion, there is, as to that, no illegality. The court is not, in such case, authorized to substitute its judgment for that of the local board.

221 N.W. at 359; *accord Bontrager*, 748 N.W.2d at 491–92 ("Although one could argue our discussion of the statute in *Anderson* did not completely clarify the district court's de novo fact-finding role, our subsequent cases consistently limited the trial de novo 'to the questions of illegality raised by the petition for the writ.'" (citation omitted.)).[5]

Our review of the district court is on assigned errors only. *Baker*, 671 N.W.2d at 414. "We are bound by the district court's findings if supported by substantial evidence." *Id.* "However, we are not bound by erroneous legal rulings that materially affect the court's decision." *Id.*

**III. Discussion.**

On appeal, the Board asserts the court erred in concluding substantial evidence did not support its finding that the Pantry created a nuisance.

We first observe that nowhere in this record has any party provided a statutory definition of "nuisance."[6] However, at oral argument the City asserted it relied upon a common law definition—that the location and operation of the particular use does not adequately safeguard the health, safety, and general

---

[5] In *Bontrager*, the court also clarified, "[W]e overrule *Weldon* [*v. Zoning Bd.*, 250 N.W.2d 396 (Iowa 1977),] to the extent it permitted the court to make new factual findings on issues that were before the board for decision. Such fact-findings will be reviewed under the substantial-evidence test traditionally employed in certiorari reviews." 748 N.W.2d at 495.

[6] The City stated at oral argument that there are various definitions of nuisance in the Municipal Code—none of which are cited in these proceedings.

welfare of persons residing in the adjoining or surrounding residential area—and the Pantry stated it was "comfortable" with that definition of nuisance.[7]  At the November 15 hearing, Donovan told the Board it needed to reconsider the Pantry's CUP and determine whether "the [Pantry's] location, design construction and operation and particular use adequately safeguards the health, safety and general welfare of persons residing in adjoining or surrounding residential areas."  We thus turn to whether the district court erred in its determination the Board's action was not supported by substantial evidence.

"Evidence is substantial 'when a reasonable mind could accept it as adequate to reach the same findings.'"  *City of Cedar Rapids v. Mun. Fire & Police Ret. Sys. of Iowa,* 526 N.W.2d 284, 287 (Iowa 1995) (citation omitted).

The Pantry's writ of certiorari asserts, "To establish a nuisance, there must be evidence that the Downtown Pantry is actually causing the problems resulting in the calls."  It also asserts Hy-Vee is located within two-tenths of a mile and has a substantially larger selection of alcoholic beverages, more than a dozen bars and restaurants serve alcohol within a half mile of the Pantry, and the Pantry has a policy and store signage prohibiting loitering.  In addition, the writ asserts:

> (21) The City of Des Moines has placed benches in the vicinity of Downtown Pantry which attracts people to the area.
> (22) The benches were added in late 2016.
> (23) The benches were part of Phase One of the Walnut Street Streetscape project that opening in January 2017.
> (24) According to information presented to the Board, in 2016, the area near Downtown Pantry resulted in 336 service calls to police

---

[7] We are concerned the substantive rights of city residents might be found to constitute a term purportedly defined by a municipal code but not provided to the parties or the court. However, because the Pantry has not objected and has agreed to the City's understanding of a "nuisance" at oral argument, we proceed with our analysis using that definition.

compared to 694 calls for service to the Court Avenue District during the same time period.

(25) According to information presented to the Board, from January 1 to October 25, 2017—after the benches were added, the area near Downtown Pantry resulted in 513 service calls to police compared to 583 calls for service to the Court Avenue District during the same time period.

(26) Downtown Pantry's practice with respect to alcohol sales did not change from 2016 to 2017.

. . . .

(2[8])[8] Downtown Pantry has never received a notice alleging that it is a public nuisance pursuant to Des Moines Municipal Ordinance Section 60-196.

In the Board's return of the writ is the Staff Report and Recommendation, which provides in part:

> The Zoning Enforcement Officer has since determined that the operation of the business has constituted a nuisance, as a significant number of reports from the Des Moines Police Department document that the operation of the business has generated or attracted criminal behavior, loitering, and alcohol sales to intoxicated persons. Furthermore, there are multiple police reports documenting patrons causing problems for people in the area and/or for residents in the immediate vicinity. Therefore, in accordance with Condition 9, the Zoning Enforcement Officer has applied to the Zoning Board of Adjustment to have the Conditional Use Permit reconsidered.

Donovan asserted the Pantry's alcohol sales is the cause of the complaints in the area. The Board agreed, relying on what it described as "detailed police reports documenting multiple occurrences of nuisance behavior both inside and in the immediate vicinity of the business."

The district court summarized the police reports:

- Officer Ned Chiodo . . . stated that he had arrested people for public intoxication who told him that they purchased alcohol at Downtown Pantry. He also testified that he once arrested a man for public intoxication inside of Downtown Pantry.

---

[8] The writ has two misnumbered paragraphs following paragraph 26; we quote the second of the two.

- Sergeant Garth House . . . stated that he noticed an "enormous uptick in vagrancy problems public intox [sp], and public urination/defecation" issues when Downtown Pantry opened.  He stated many people arrested for public intoxication and similar offenses stated that they purchased alcohol from Downtown Pantry.
- Sergeant Lori Neely with the Des Moines Police Department stated that people complained to her about Downtown Pantry.  She also provided that maintenance workers at the Fleming Building told her they had had problems with Downtown Pantry employees allowing people into the building to use the bathrooms and loiter in the lobby of the Fleming Building.

The district court noted the Pantry was unable to challenge the credibility and reliability of the allegations made by speakers at the Board hearing but did present evidence at the certiorari hearing.  With respect to Sergeant House's claim of "an enormous uptick" in problems "when the Downtown Pantry opened," the court found, "[T]he significant increase in calls for police began in 2017, and Downtown Pantry has operated its business in the location since 2013."  The court also observed,

> Furthermore, of the various calls to police made in the area, very few had any direct relation to Downtown Pantry.  Of the police reports that directly affect/mention Downtown Pantry, Downtown Pantry is not accused of wrongdoing.  (*See, e.g.*, Return of Writ Item 10-64) (an individual used a stolen credit card at Downtown Pantry); (Return of Writ Item 10-68) (an intoxicated man entered Downtown Pantry and was arrested for public intoxication inside of the store).

The Board argues the court did not give sufficient deference to witness statements, relying especially on the statements of Officers House and Chiodo to support its claims of the increased arrests and statements of Landucci and neighborhood resident Chris Swailes that intoxicated people were allowed to purchase alcohol at the Pantry.[9]  Deference, however, is only given to findings

_____

[9] The Board refers to these statements as testimony.  However, statements to the Board are not made while a person is under oath.  And while we acknowledge that the Board is

supported by substantial evidence. Landucci's "encounter with an intoxicated person outside her building" is unconnected to the Pantry. The Board's assertion that its conclusions are supported by "detailed police reports" is without substantial support in the record.

It seems clear that the nuisance complained of is congregating homeless persons and associated substance abuse and criminal activities. The district court observed other factors contributed to the situation in the area and calls to the police, such as the completion of the construction of the Sixth and Walnut intersection, the installation of benches, persons shoplifting narcotics from the Walgreens, the presence of the bus station two-tenths of a mile from the Pantry, foot traffic from a bus stop located across the street from the Pantry, the Hy-Vee two-tenths of a mile away, and the homeless shelter six-tenths of a mile away. The anecdotal evidence here does not show the Pantry is the cause of the situation. As observed by the district court:

> Homelessness and associated substance abuse and criminal activities are serious issues, and it is apparent this problem concerns people who live and work in the downtown Des Moines area. However, nothing in the record before the Board established that this issue arose from Downtown Pantry's alcohol sales. The Board cannot find Downtown Pantry in violation of its CUP because it makes sales to the homeless people that subsequently loiter at a nearby intersection where there are plenty of benches to sit.

In addition, we agree with the district court the Board's revocation of the Pantry's CUP was unreasonable, arbitrary, and capricious—revoking Downtown Pantry's CUP to sell alcohol will not eliminate alcohol sales in the immediate area

---

permitted to rely on anecdotal evidence, *Bontrager*, 748 N.W.2d at 496, the district court was within its authority to take evidence relevant to the questions of illegality raised by the petition for the writ.

nor will it likely eliminate the nuisance. The Board acknowledged as much, stating[:] "All you're doing is pushing poor people and homeless people to some other location, probably downtown. You're not solving the problem."

Because we agree with the district court there is not substantial evidence to support the Board's finding the Pantry's operation had created a nuisance and the revocation of the CUP was arbitrary and capricious, we affirm.

**AFFIRMED.**